INDUSTRIAL ROOFING SERVICES, INC.
and Keith Dippel,
Plaintiffs-Appellants-Petitioners,

v.

Randy J. MARQUARDT, Dale M. Marquardt,
Bradley L. Engnath, Jeffrey P. Sampson and
Roofing Design & Solutions, Inc.,
Defendants-Respondents,

Steven W. SCHOEN and John G. Dorrer,
Defendants.

Supreme Court

*No. 2005AP189. Oral argument September 7, 2006.
—Decided February 8, 2007.*

2007 WI 19

(Also reported in 726 N.W.2d 898.)

For the plaintiffs-appellants-petitioners there were briefs by *Robert F. Johnson, Jane C. Schlicht, Paul D. Cranley,* and *Cook & Franke S.C.,* Milwaukee, and oral argument by *Robert F. Johnson.*

For the defendants-respondents there was a brief by *Shepard A. Davis* and *Burton & Davis, LLP,* Milwaukee, and oral argument by *Shepard A. Davis.*

¶ 1. ANN WALSH BRADLEY, J.   Industrial Roofing Services, Inc. and Keith Dippel (collectively "Industrial") seek review of an unpublished court of appeals decision affirming a circuit court ordered sanction dismissing with prejudice Industrial's complaint against defendants Randy Marquardt, Dale Marquardt, Bradley Engnath, Jeffrey Sampson, and Roofing Design & Solutions, Inc. (collectively, "Marquardt").[1] Industrial contends that the circuit court erroneously exercised its discretion because, first, the attorney conduct underlying the dismissal was not egregious; second, that con-

---

[1] *See Industrial Roofing Services, Inc. v. Marquardt,* No. 2005AP189, unpublished slip op., (Wis. Ct. App. Dec. 28, 2005) (affirming order of circuit court for Waukesha County, Robert G. Mawdsley, Judge).

84

duct should not be imputed to Industrial because Industrial was not at fault for its attorney's conduct; and third, the court based its decision on a mistake of fact.

¶ 2.  We determine that the circuit court did not erroneously exercise its discretion in entering an order of dismissal with prejudice. The court's conclusion that the conduct was egregious is one that a reasonable judge could reach. While we acknowledge that it is an erroneous exercise of discretion for a circuit court to impose the sanction of dismissal with prejudice when the client is blameless, the court in this case considered Industrial's conduct in imposing the sanction and found that Industrial was not blameless. Finally, we determine that the circuit court's decision was not based on a mistake of fact. Although we depart from some of its rationale, we affirm the court of appeals.

I

¶ 3.  This is a case about the sanction of dismissal with prejudice. Cases involving sanctions are often fact intensive. Additional facts will be discussed later in the opinion, supplementing the facts set forth here.

¶ 4.  Keith Dippel founded and owns Industrial Roofing, which provides consulting services for roofing applications. Between July 2002 and January 2003 several employees (including the five Marquardt defendants) resigned from Industrial and established Roofing Design & Solutions, Inc., which provides similar consulting services. Other employees resigned and joined other roofing companies.

¶ 5.  Industrial filed a complaint in the circuit court on June 19, 2003, against twelve defendants, asserting eight causes of action. The complaint alleges that the defendants used Industrial's information to set up a competing business in violation of Wisconsin law

and their contractual duties and obligations to Industrial. Generally, without identifying individual Marquardt defendants, the complaint alleges that "individual defendants" breached oral employment contracts, breached the duty of good faith under those contracts, misappropriated Industrial's trade secrets and property, and intentionally interfered with Industrial's business relationships and contacts.[2]

¶ 6. The Marquardt defendants were represented by a single law firm. They denied the allegations of the complaint and asserted as an affirmative defense that the allegations were frivolous, "without basis in law or fact," and subject to statutory sanctions. Between August 28 and September 19, 2003, Marquardt and other defendants served written discovery on Industrial, including requests for document production, interrogatories, and requests for admission. Realizing a potential for conflicts of interest in representing multiple defendants, the Marquardt attorney submitted interrogatories and requested documents regarding what allegations in the complaint applied to which Marquardt defendants.

¶ 7. On October 22, 2003, Industrial responded to each of Marquardt's requests for documents by objecting to the extent that the requests called for production of confidential information, and by stating that "respon-

---

[2] This review pertains only to the five Marquardt defendants. A different group, the "Clark" defendants, had their complaint dismissed for essentially the same reasons as the Marquardt defendants, but under a separate order. That order was not appealed, and thus the Clark defendants are not party to this review. The complaint raises additional allegations against the Clark defendants, including breach of express employment contracts and breach of fiduciary duty. The complaints against other of the original 12 defendants have also been dismissed, not appealed, and are not before the court for review.

sive documents will be provided to the extent they exist." No documents were attached, and no time or place was given for an inspection of any documents.

¶ 8. Several defendants (though none of the Marquardt defendants) filed motions to dismiss for lack of personal jurisdiction. The circuit court scheduled a hearing for October 27, 2003, to hear those motions. Dippel attended the hearing. However, the hearing could not go forward because his attorney, Thomas Van Beckum (also Industrial's attorney), failed to serve on the opposing attorneys any responses to the motions. At the scheduled motion hearing, the court expressed disappointment that very little could be accomplished due to Industrial's failure to serve its response in a timely fashion. Industrial's attorney apologized to the Court for "wast[ing] quite a few people's time."

¶ 9. An attorney who filed a motion to dismiss asked the court to decide the motion only upon the papers timely filed, explaining that the response had been due at the beginning of September, and that he had written Industrial's attorney to let him know the response was overdue. The court responded that "[t]here are different sanctions that the Court can impose under the circumstances too for violations of the rules. So at this point I'm going to leave that for next time." Accordingly, the court rescheduled the hearing on the motions to dismiss to November 17, 2003.

¶ 10. Marquardt's attorney then advised the court that he had served interrogatories which exceeded the number allowed in the local court rule. He requested approval to go beyond the local limit, and argued that doing so was justified by the vagueness of the allegations, and the multiple counts and multiple defendants

he represented. The court suggested that the attorneys should work together to resolve the issue regarding the number of interrogatories.

¶ 11. Following the October 27 hearing, Marquardt's attorney repeatedly attempted to call Industrial's attorney to discuss the number of interrogatories. None of his telephone calls was returned. In an effort to contact him, Marquardt's attorney also sent Industrial's attorney letters and faxes. He received no responses.

¶ 12. At the November 17 hearing, which Dippel attended, Industrial's attorney stated that his office was responsible for the mistake from the last hearing and that he, rather than his client, should pay any sanction. The circuit court responded by ordering a sanction of attorney's fees for failure to reply, failure to copy the other side, and for wasting a court hearing date. The court imposed the sanction against the plaintiff but allowed that plaintiff's counsel could pay: ". . . the Court would order that the attorneys fees for the appearance time would be a sanction to be paid for by the plaintiff. If plaintiff's counsel wants to do that, it's fine."

¶ 13. After denying the motions to dismiss, the court issued a scheduling order which required that by March 30, 2004, Industrial produce a witness list, including expert witnesses, and an itemized list of special damages. Anticipating that the parties would be filing dispositive motions, the court deferred scheduling the trial until after the motions were heard.

¶ 14. As of February 19, 2004, Marquardt had received none of the requested discovery. On that date Industrial filed a motion for a protective order regarding Marquardt's interrogatories and requests for admission. Notwithstanding its motion for a protective order,

Industrial submitted a response to Marquardt's requests for admission with a blanket denial.

¶ 15.  The Clark defendants filed a motion to compel Industrial to answer discovery because they too had received a response to their request for document production indicating that the "documents will be provided." None had been received. In addition, Industrial's answers to Clark's interrogatories were unspecific and merely reiterated statements from the complaint. The hearing on that motion was set for February 23, 2004. However, immediately before the scheduled hearing Industrial's attorney provided responses to Clark's request to admit, submitted answers and supplemental answers to interrogatories, and in the hallway outside of the courtroom advised Clark's attorney that he would provide the documents requested by all of the defendants later that week.

¶ 16.  When the case was called, Clark's attorney complained about receiving the discovery in such a tardy fashion:  "The discovery requests were served back in August and here we are in, you know, mid February, end of February, and we're still, you know, just this morning receiving amended responses . . . ."

¶ 17.  He asked the court to consider imposing sanctions for what he thought to be another useless motion hearing. Specifically he requested that the court consider assessing attorney's fees and expenses for filing the motion and deeming certain matters to be admitted because of the late response. He also advised the court that "not once did I receive a return phone call from Industrial's attorney in response to my letters and phone calls to him."

¶ 18.  The Court inquired if any of the other defendants were having difficulties or missing discovery. Marquardt's attorney responded that he too had

89

been "frustrated in the lack of communication with plaintiff's counsel." He continued: "As I sit here months and months after this case was initiated, I have no idea what the allegations against any of my clients really are. . . . I have no idea why the allegations even exist."[3]

¶ 19.  Marquardt's attorney advised the court that he had filed his request for production of documents in September, and that to date he had not received a single document. "I'm now being told just this morning again the same position, that documents will be available later this week. I guess I'd like the Court's assistance on when we're going to find out what this case is about."

¶ 20.  The court expressed concern about what it characterized as Industrial's attorney's pattern of failing to respond. This pattern included the attorney's failure to provide the other attorneys with Industrial's response to the motions before the October 27 hearing, his failure to provide sufficient response for the Marquardt defendants to assess whether the allegations had any merit, his failure to respond to communications from any of the other attorneys, and his continued failure to produce any documents. The court also expressed concern that the case was not progressing due to Industrial's inaction, and that the defendants, including Marquardt, believed that there was no merit to the allegations.

---

[3] Marquardt's attorney further informed the court that he had been served with a motion for a protective order which challenged the number of interrogatories he filed on the grounds that each of the 30 interrogatories Marquardt filed had multiple parts. The court pointed out the Marquardt interrogatories' "multiplicity [was] caused by the complaint itself" insofar as there were numerous alleged causes of action and numerous defendants. It also noted that the general wording of the complaint would allow for responses that applied to multiple defendants.

¶ 21. The court instructed Industrial to provide "instantaneous answers" and that "[y]ou're going to be throwing some discovery at them, and I assume it will be promptly answered and completely answered." It further imposed payment of attorney's fees for the February 23 hearing as a sanction, and warned that the "next time it will be a larger sanction under the circumstances."

¶ 22. The court set the matter for a status hearing on June 14, 2004. It entered an order that Industrial was to respond to the outstanding discovery requests by March 1.

¶ 23. No documents were provided to Marquardt "later that week" as Industrial's attorney had promised. No pending interrogatories or responses to requests for admissions were answered by March 1, as ordered by the court. Attorney's fees imposed as a sanction were not paid "forthwith" as ordered by the court.

¶ 24. On March 22, after the response deadline had passed, Industrial answered Marquardt's requests for admission. The response consisted largely of objections and statements that Industrial could neither admit nor deny "until discovery has been taken from [Marquardt]." Industrial had to that point, nine months after filing its complaint, not made a single discovery request on Marquardt.

¶ 25. Industrial continued in its failure to provide any documents in response to Marquardt's request for production. It also failed to meet the court-ordered deadline of March 30 for naming witnesses, designating expert witnesses, and itemizing damages.

¶ 26. Marquardt and other defendants filed motions to dismiss, for summary judgment, and for sanctions. Marquardt's memorandum in support of its motion explains that it sought dismissal for discovery

violations and violation of court orders, and that it sought sanctions "for filing and continuing" a frivolous matter under either Wis. Stat. § 814.025, § 802.05, or § 804.12(2) (2003–04).[4]

¶ 27.  At the June 14 hearing, which Dippel did not attend, Industrial's attorney advised the court that he was undergoing personal and emotional problems for which he was seeking professional treatment. He asserted that those problems were the root of his failure to respond to discovery and failure to comply with the court's orders. He stated:

> The fault in this case in terms of responding [has] been mine. My client wants to prosecute the case and wishes for the ability to do so without counsel. I explained to my client the need for someone else to take over the case. And if the Court's ruling today, to the extent there are sanctions to be levied, Judge, I would ask the Court to levy them against me in terms of any fees and not my client.

¶ 28.  The circuit court accepted the explanation, but inquired as to Industrial's knowledge of the ongoing compliance issues regarding the discovery order. Industrial's attorney correctly indicated that Dippel had been present at the November 17, 2003, hearing when the scheduling order with the discovery timeline was issued, and in which the court had first imposed sanctions against the plaintiff. He also indicated that Dippel knew of the substance of the June 14 hearing

---

[4] The cited statutes provide, among other things, that courts may impose sanctions for commencing and maintaining frivolous actions. All subsequent references to the Wisconsin Statutes are to the 2003–04 version of the statutes. Wisconsin Stat. §§ 814.025 and 802.05 were repealed and § 802.05 was recreated effective July 1, 2005. S. Ct. Order 03–06, § 1, 2005 WI 38, 278 Wis. 2d xiii-xvi (eff. Mar. 31, 2005).

and that he had already advised Industrial to seek new counsel. Attorneys for Clark and Marquardt mistakenly indicated to the court that Dippel was present at the February 23 hearing where the court warned of more severe sanctions for future discovery violations. The transcript from that hearing shows that Dippel was not present.

¶ 29.  The court indicated that this was the worst case of discovery abuse that it had seen in an entire career. However, it also noted that the question of whether "the fault lies here, with the client versus the attorney" mattered to the appropriate sanction. The court therefore spent the remainder of the hearing considering various possibilities for sanctions, and discussing those possibilities with each of the attorneys present.

¶ 30.  The court weighed four options: dismissal with prejudice, dismissal without prejudice, allowing Industrial to retain different counsel and file a response, and, because of the assertion that the complaint was frivolous, having a hearing on "the issue of validity, where [Industrial] is to come up with the opportunity to demonstrate that this is not a frivolous case." The court indicated that it wanted to further reflect on the available options and that he would take the motions under advisement.

¶ 31.  After the June 14 hearing, Industrial hired new counsel. On June 24, Industrial's new attorneys filed a notice of appearance and an affidavit from Dippel. They also requested a status conference and an opportunity to present a plan to handle the claims.

¶ 32.  In his affidavit, Dippel disputed his attorney's statements that he had been aware of the existence and substance of the June 14 hearing. He stated that, contrary to his attorney's assertion, he had

been advised to seek new counsel only after the June 14 hearing. Dippel also stated that he sought new counsel immediately after being advised to do so, that he first contacted his new attorney on June 18, and that he first met with the new attorney on June 21. He further described trying, repeatedly and unsuccessfully, to contact his attorney to retrieve Industrial's files in the week following the hearing. He stated that he did not retrieve those files until June 22.

¶ 33. According to his affidavit, Dippel had been aware of neither the February 23 hearing nor the various defendants' motions to dismiss. In addition, he described his concerns about his attorney's conduct during discovery and the attorney's failures to communicate with him.

¶ 34. In a decision filed on June 29, 2004, the circuit court denied Industrial's request for a status conference, stating that it would first decide the pending motions. The court indicated that it would consider Dippel's affidavit in its decision.

¶ 35. On August 10, 2004, the circuit court filed a written decision on the pending motions, and on September 16, the circuit court issued an order dismissing the complaint without prejudice. The dismissal allowed that Industrial could re-file with two conditions. First, Industrial would have to pay Marquardt attorney's fees of $3,926.81. Second, the re-filing would have to take place within 60 days of the order.

¶ 36. The order stipulated that "[i]f the 60 days passes and the attorneys fees are not paid and the case is not re-filed, the case is then dismissed with prejudice as to the Marquardt Defendants." The order also revisited the hearing on viability of the claims as discussed at the June 14 hearing. It stated that upon re-filing Industrial would have to "demonstrate, at a hearing to

be held immediately upon such re-filing, the viability of the allegations against the Marquardt Defendants in the complaint from both a factual and legal basis."[5] Industrial filed a motion for reconsideration, and the court denied the motion at a hearing on October 21.

¶ 37.  On October 11, 2004, Industrial petitioned the court of appeals for leave to appeal the circuit court's September 16 order dismissing the case without prejudice. The deadline for Industrial to re-file was November 15, 2004, and the court of appeals was reluctant to intervene before that date. It therefore issued an order on November 11 holding the petition in abeyance, noting that a dismissal with prejudice would constitute a final order from which Industrial could appeal.

¶ 38.  Industrial neither paid the sanctions nor re-filed the case, and the circuit court entered an order dismissing the claim against Marquardt with prejudice on December 9, 2004. The order was "based on the failure of plaintiffs to pay sanctions and re-file the case."[6] Relying on *Johnson v. Allis-Chalmers Corp.,* 162 Wis. 2d 261, 470 N.W.2d 859 (1991), the court of appeals affirmed the circuit court in a unanimous decision, and Industrial petitioned for review.

II

¶ 39.  This case presents the issue of whether the circuit court erroneously exercised its discretion in

---

[5] A similar order was entered with respect to the Clark defendants, for whom Industrial was to pay $16,077.50 in attorney's fees. As previously noted, Industrial did not appeal that order of dismissal.

[6] An order dismissing with prejudice the complaint against the Clark defendants was entered on January 5, 2005.

dismissing the plaintiff's complaint with prejudice as a sanction for failure to respond to discovery and violation of court orders.

¶ 40.    Our inquiry is not whether we would have done the same thing if we were sitting as a circuit court judge. Our job is not to Monday-morning quarterback the decision with the advantage of 20/20 hindsight. Rather, the standard of review is to determine whether the circuit court erroneously exercised its discretion.

¶ 41.    The standard of review, although circum-scribed by law, is a deferential standard. The decision to impose sanctions and the decision of which sanctions to impose, including dismissing an action with prejudice, are within a circuit court's discretion. *Schultz v. Sykes,* 2001 WI App 255, ¶ 8, 248 Wis. 2d 746, 638 N.W.2d 604. "A discretionary decision will be sustained if the circuit court has examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach." *Johnson,* 162 Wis. 2d at 273 (citing *Loy v. Bunderson,* 107 Wis. 2d 400, 414–15, 320 N.W.2d 175 (1982)).

III

¶ 42.    We analyze first the circuit court's conclusion that the conduct was egregious. Although dismissing an action with prejudice is within a circuit court's discretion, it is a particularly harsh sanction. It is therefore appropriate only in limited circumstances. *See Hudson-Diesel, Inc. v. Kenall,* 194 Wis. 2d 531, 542, 535 N.W.2d 65 (Ct. App. 1995).

¶ 43. Specifically, Wis. Stat. § 804.12(2)(a) and § 805.03 limit the sanctions that circuit courts may impose for failure to prosecute and for failure to comply with court orders to those that are "just."[7] Wisconsin courts have interpreted this limitation to mean that dismissal requires that the non-complying party has acted egregiously or in bad faith. *Johnson,* 162 Wis. 2d at 275; *Trispel v. Haefer,* 89 Wis. 2d 725, 732, 279 N.W.2d 242 (1979); *Furrenes v. Ford Motor Co.,* 79 Wis. 2d 260, 267–69, 255 N.W.2d 511 (1977). "[F]ailure to comply with circuit court scheduling and discovery orders without clear and justifiable excuse is egregious conduct." *Garfoot v. Fireman's Fund Ins. Co.,* 228 Wis. 2d 707, 719, 599 N.W.2d 411 (Ct. App. 1999); *see also State v. Smythe,* 225 Wis. 2d 456, 469–70, 592 N.W.2d 628 (1999). Where the circuit court finds that failures to respond to discovery and follow court orders are "extreme, substantial, and persistent" it may dismiss the action with prejudice on the grounds that the conduct is egregious. *Hudson-Diesel,* 194 Wis. 2d at 543.

¶ 44. Industrial contends that the circuit court erroneously exercised its discretion in dismissing the complaint with prejudice because the failures to respond to discovery and follow court orders were not

---

[7] Under Wis. Stat. § 804.12(2)(a) "If a party . . . fails to obey an order to provide or permit discovery, [the court] may make such orders in regard to the failure as are just, [including] . . . dismissing the action." Section 805.03 provides:

For failure of any claimant to prosecute or for failure of any party to comply with the statutes governing procedure in civil actions or to obey any order of the court, the court . . . may make such orders in regard to the failure as are just, including . . . orders authorized under § 804.12(2)(a).

egregious. The foundation of Industrial's argument is that it was in violation of the circuit court's discovery orders for only three months at the time the case was dismissed, and that this is not sufficient for Industrial's conduct to be considered egregious. Industrial contrasts its actions with those in *Johnson,* where the plaintiffs were in violation of discovery orders for over two years. *Johnson,* 162 Wis. 2d at 268–70.

¶ 45. *Johnson* involved a products liability suit dismissed for failure to comply with scheduling and discovery orders. After the plaintiffs, for almost six months, had been in violation of a court order to provide a list of witnesses, deposition dates, and specific information regarding special damages, the defendants filed a motion to dismiss. The circuit court initially declined to dismiss the action. After the plaintiffs had been in violation of the order for almost two years, the court granted a motion to dismiss. *Id.* at 269. At a hearing on a motion for reconsideration, the Johnsons testified that they had been unaware of the motions to dismiss until about four months before their case was dismissed. *Id.* at 270. This court determined that the dismissal was not an erroneous exercise of the circuit court's discretion. *Id.* at 287.

¶ 46. While the *Johnson* plaintiffs were in violation of the circuit court's discovery orders for longer than Industrial, time alone is not reason enough to conclude that the conduct in this case was not egregious. In some respects, Industrial's conduct was more egregious than the Johnsons'. The *Johnson* defendants had some idea of the case against them, could identify what allegations applied to which defendant, and had received some document production. While the length of time in violation of court orders was longer in *Johnson,* the omissions in the instant case are more substantial.

¶ 47. Industrial's complaint alleged that each of the Marquardt defendants misappropriated property, trade secrets, proprietary information, and customer information. However, it did not specify the property and information taken, and it did not specify which Marquardt defendants took what kind of property or information. In order to answer these basic questions Marquardt first served interrogatories and requests for document production on September 19, 2003. On October 22 Industrial responded to the requests for document production merely by stating that "responsive documents will be provided to the extent they exist." It did not respond to the interrogatories.

¶ 48. In addition to not meaningfully responding to defendants' discovery requests, Industrial impeded the case's progress by failing to timely respond to the August and September 2003 motions to dismiss. Moreover, by failing to serve its responses to those motions on the opposing attorneys, Industrial's attorney caused the court and each of the opposing attorneys to attend the October 27 hearing for naught. This led the court to later impose sanctions for failure to reply, failure to copy the opposing attorneys, and for wasting the court's hearing date.

¶ 49. Industrial's failure to respond continued after the October 27 hearing. At that hearing, the court suggested that the Marquardt and Industrial attorneys should work together to resolve the issue regarding the number of interrogatories. Marquardt's attorney repeatedly called, mailed, and faxed Industrial's attorney in an attempt to work out some solution, but none of those communications was answered or returned.[8]

---

[8] This failure to take seriously the court's suggestion that Industrial work with Marquardt led Marquardt to redraft its

¶ 50. Industrial's pattern of non-responsiveness continued. On February 19, 2004, it issued a blanket denial to the requests for admission. As of the February 23 hearing date Marquardt still had not received responses sufficient to establish what of Industrial's allegations pertained to which defendant and what property was alleged to have been taken.

¶ 51. In order to end Industrial's continued failure to respond, the court exhorted Industrial's attorney to provide "instantaneous answers" and demanded that the defendants' requests would be "promptly answered and completely answered." The court even allowed that Industrial could provide narrative answers, so long as they were fact-laden enough to allow the defendants to assess the allegations. The court recognized that Industrial's failure to respond was so substantial that it left the Marquardt defendants unable to assess the nature of the case against them, explaining to Industrial's attorney that "[t]hey just want to get started. They want to know where they're going, . . . because at least from what they argued it says there's nothing here. So if there's nothing here they want to get out."

¶ 52. The court also noted that Industrial's failures were persistent, and that "at this point a pattern has developed" in which Industrial failed to respond to discovery and failed to communicate with opposing attorneys trying to work out the discovery problems. As a response to that pattern the court imposed sanctions and warned of greater sanctions if the pattern continued. Industrial's attorney told the court that he would provide documents for the defendants the same week as

interrogatories to be within the local limit and supplement them with requests for admission. Marquardt served these on Industrial January 15, 2004.

the hearing. The court entered an order setting March 1 as the deadline for responding to the outstanding discovery requests.

¶ 53.  Again, Industrial failed to timely respond. Despite its attorney's assurance that it would provide requested documents the week of the February hearing, he did not provide them. Despite the court's order to respond to outstanding discovery requests by March 1, Industrial did not respond. While Industrial did respond to Marquardt's requests for admission on March 22, it did not produce any documents, and it did not respond to any interrogatories, even in the narrative format that the court had allowed at the February hearing.

¶ 54.  Moreover, Industrial failed to comply with the court's scheduling order by not producing a witness list or itemized damages by March 30, 2004. Even by the June 14, 2004 hearing on defendants' motions to dismiss, Industrial had not provided Marquardt any documents and had not answered any of Marquardt's interrogatories.

¶ 55.  The circuit court in this case explained that there was a persistent pattern in which Industrial's attorney failed to respond and follow court orders. The court considered the failure to be extreme. It said that this case represented the worst example of failure to respond that it had seen its entire career. It commented that "I've never had a situation like this. Maybe because I've never seen the lack of response [shown here]" and that "[a]t least in my career, I haven't seen this type of omission."[9] Finally, the court recognized the failures to

---

[9] The dissent contends that the circuit court's language is open to interpretation. Dissent, ¶ 111. It suggests that it is just as plausible that the circuit court was surprised because it was

be substantial. The court determined that despite the personal and emotional problems of Industrial's attorney, "at this point and certainly from the facts here, it fits into all the major sanction cases."

■

¶ 56.  Upon a review of the record we determine that the circuit court did not erroneously exercise its discretion when it concluded that Industrial's attorney's actions were egregious. The court examined the facts and the law, and explained why it thought that those failures were persistent, substantial, and extreme. The court's conclusion was one that a reasonable judge could reach. Accordingly, the circuit court's exercise of discretion will be sustained.

## IV

¶ 57.  Industrial argues next that it was an erroneous exercise of discretion for the circuit court to impute the conduct of the attorney to the client where the client is blameless. It cites to *Charolais Breeding Ranches, Ltd. v. Wiegel,* 92 Wis. 2d 498, 285 N.W.2d 720 (1979), for the proposition that the decision to impute an attorney's failures to a client will depend upon the client's responsibility. Industrial argues that because it was reasonable and diligent during the case, *Charolais* suggests that the circuit court ought not to have imputed its attorney's conduct to Industrial.

¶ 58.  In *Charolais,* this court allowed that an attorney's failure "may constitute excusable neglect on

the first time in the circuit court's experience that a lawyer accepted full responsibility and blame. We do not consider it a plausible interpretation that the circuit court did not find the conduct egregious in light of its statements that "At least in my career, I haven't seen this type of omission. . . ." and "it fits into all the major sanction cases."

the part of the client, when the client has acted as a reasonable and prudent person in engaging a lawyer of good reputation, has relied upon him to protect his rights, and has made a reasonable inquiry concerning the proceedings." 92 Wis. 2d at 514 (citing *Wagner v. Springaire Corp.*, 50 Wis. 2d 212, 221, 184 N.W.2d 88 (1971); *Paschong v. Hollenbeck*, 13 Wis. 2d 415, 423, 108 N.W.2d 668 (1961)). The *Charolais* court concluded that the circuit court's exercise of discretion "may or may not call for imputation, depending on the facts of each case." *Id.*

¶ 59.  The discussion in *Charolais* appears to be at odds with this court's determination in *Johnson*. There the Johnsons, like Industrial here, argued that the egregious conduct of counsel should not be imputed to a blameless client. The Johnsons urged this court to adopt a per se rule "prohibiting dismissal absent a showing that the party itself bears some responsibility for the failure of its attorney-representative to comply with the court's orders." *Johnson*, 162 Wis. 2d at 281.

¶ 60.  This court declined to adopt such a rule, concluding that it was unworkable and would undermine the circuit court's ability to effectively administer judicial business. The court expressed concern that the sanction of dismissal would become "toothless" because clients could avoid the sanction simply by claiming that they were unaware of their attorneys' actions. *Id.* at 283. Balancing the equities, the court determined that "it is more equitable to allow the adverse consequences to fall upon the shoulders of the party who has chosen the attorney, rather than on the adversary and the other litigants who await their day in court." *Id.* at 285.

¶ 61.  The concerns of the *Johnson* court for both equity and effective judicial administration remain cen-

103

tral to this court's analysis. However, we depart from the *Johnson* court's conclusion that it would be inequitable to adopt a rule akin to the proffered rule or that it would necessarily result in ineffective and "toothless" administration of justice. Accordingly, we determine that it is an erroneous exercise of discretion for a circuit court to enter a sanction of dismissal with prejudice, imputing the attorney's conduct to the client, where the client is blameless. To the extent that *Johnson* can be interpreted as concluding that the client's conduct is irrelevant or that a dismissal with prejudice is warranted even when the client is blameless, then that part of *Johnson* is overruled.[10]

¶ 62. We find persuasive the five reasons set forth in the concurring opinion in *Johnson* which support our determination.

> One, as a practical matter, a layperson ordinarily cannot be expected to supervise his or her attorney through every pretrial phase of litigation. . . .

> Two, the consequence for the blameless litigant whose case is dismissed is extraordinarily severe. The litigant never gets the opportunity for a trial on the merits. . . .

---

[10] The dissent and concurrence contend that from such a change in the law, it follows that the circuit court's conduct was beyond the limits of its discretion. Dissent, ¶ 102; concurrence, ¶ 96. As explained above, there is no question that the circuit court's decision would be within its discretion under the *Johnson* standard that was in effect at the time of the decision. Under the standard we adopt here, the circuit court must find that the client is not blameless before it can dismiss a case with prejudice; that is precisely what the circuit court did here. Thus, under either standard, the circuit court's exercise of discretion was proper. That a circuit court exercised discretion appropriate to the stricter standard established here does not render its conduct beyond the limits of its discretion under the previous, less-strict standard.

104

Three, the harm to the opposing party is ordinarily limited, and the opposing party can be compensated.

Four, the circuit court has other sanctions available to it short of dismissal of the litigant's case with prejudice, the most severe sanction possible. Sanctions could be imposed on the lawyer personally.

Five, while a circuit court's efforts to move the docket expeditiously are important, dismissing actions for counsel's failure to comply with court orders does not necessarily foster sound, speedy administration of justice.

*Id.* at 290–291 (Abrahamson, J., concurring) (footnotes omitted; citations omitted).

¶ 63.   Our departure from *Johnson* has been forewarned by more recent cases that address the issue of imputing an attorney's conduct to a client in the context of dismissal with prejudice as a sanction.[11] In *State v. Smythe,* this court described the circumstances in which the egregious conduct of the attorney may be imputed to the client in order to justify dismissal. The court gave examples, such as a party's failure to act as a reasonable and prudent person and failure to inquire about the proceedings. 225 Wis. 2d at 469–70 n.11 (citing *Charolais,* 92 Wis. 2d at 514). More recently the court in *Garfoot v. Fireman's Fund Ins. Co.,* after discussing *Johnson, Charolais,* and *Smythe,* set forth a standard: When an attorney's conduct is egregious "the trial court is to consider the client's failure to act in a

---

[11] Though the general rule in other jurisdictions more closely aligns with *Johnson* and countenances dismissal with prejudice regardless of client fault, there are numerous jurisdictions that demand consideration of client conduct before imputing attorney conduct. *See* Annotation, *Incompetence of counsel as ground for relief from state court civil judgment,* 64 A.L.R.4th 323 (1988, updated 2004), § 4d.

105

reasonable and prudent manner, and the client's knowledge of or complicity in that conduct, in deciding whether to impute the attorney's conduct to the client for purposes of a sanction." 228 Wis. 2d at 728.[12]

¶ 64.   Even if the record supports the view that the client, Industrial, was not itself directly to blame for those failures, it does not follow that Industrial is without fault. Industrial's fault lies in its failure to act in a reasonable and prudent manner when it knew or had reason to know that its attorney was failing to properly manage the case.

¶ 65.   The circuit court relied on several facts in assessing Industrial's role in the dismissal. First, Dippel was present at the October 2003 hearing on motions to dismiss in which the parties could conduct no business because of Industrial's attorney's failure to provide copies of Industrial's response to the motions. Dippel was also present at the November 2003 hearing in which the circuit court first imposed sanctions upon Industrial.

¶ 66.   The court also reviewed Dippel's affidavit and, in its August 10, 2004, decision, found that the affidavit demonstrated that some of his attorney's conduct should have raised suspicions:[13]

---

[12] Although a circuit court must consider the client's conduct when imposing sanctions generally, the focus of our inquiry is more limited. We consider the client's blameworthiness only in the context of the sanction of dismissal with prejudice.

[13] Whether the circuit court should have granted an evidentiary hearing was not raised as an issue on appeal and is not before us. We note that on a motion for a sanction of dismissal with prejudice that if the circuit court relies upon disputed facts or inferences from those facts in its decision, an evidentiary hearing, rather than simply oral argument based on briefs,

> The subsequent [i.e., to the November 2003 hearing] contacts Mr. Dippel had with [Industrial's attorney] should have raised suspicion as to his abilities to prosecute the case. . . . Merely because he relied on [his attorney's] assurance that things were being taken care of does not exonerate Mr. Dippel from the consequences and sanctions.

At the October 2004 hearing on Industrial's motion for reconsideration, the circuit court further explained the role of the affidavit in its decision:

> [I]n that affidavit is sufficient contacts with [Industrial's attorney] where things were not being accomplished and his concerns were elevated that the flags had to be up . . . . Even the affidavit that [Dippel] files in this matter [i.e., the motion for reconsideration] basically supports the connections that the Court had made.

¶ 67. In the affidavit Dippel states that he contacted his attorney about the status of discovery after

affidavits, and depositions, is necessary to resolve the disputes. *Garfoot,* 228 Wis. 2d at 725 n. 8. *See also State v. Jason R.N.,* 201 Wis. 2d 646, 648, 549 N.W.2d 752 (Ct. App. 1996). In this case, the circuit court did not rely on Industrial's attorney's claims during the June 14, 2004 hearing that Dippel was aware of the substance of that hearing and the February 23 hearing. Rather, the court relied on Dippel's affidavit as support for the view that Industrial did not act reasonably and prudently.

The dissent asserts that Dippel's affidavit raises disputed facts or that more than one reasonable inference can be drawn from the facts set forth in the affidavit. Dissent, ¶¶ 127–28. However, the facts in the affidavit are not disputed, and the circuit court made no factual inferences from the affidavit. Rather, it determined that the facts in the affidavit supported the legal conclusion that Industrial was not blameless. Industrial disputes that legal conclusion, but not the facts upon which it is based.

the defendants filed a response to the lawsuit, after the November 17 scheduling conference, in January, and in February. During that period, the attorney assured him that he was managing the case appropriately.

¶ 68.   The affidavit then describes a change in the attorney's behavior toward Dippel:

> During the February, March and April timeframe, I made repeated phone calls to [my attorney's] office and sent emails regarding the status of the case, the status of the witness list and experts and the status of discovery. Rarely was I able to reach [my attorney] by phone, and rarely did he return my phone calls.

These statements, together with Dippel's presence at the October and November hearings, provide a sufficient basis for the conclusion that Industrial failed to act in a reasonable and prudent manner. Industrial knew or had reason to know that its attorney was failing to properly manage the case.[14]

---

[14] Industrial's attorney received a public reprimand pursuant to SCR 22.09 for his conduct in this case (Reprimand 06–OLR-12), and the dissent claims that the reprimand shows that Industrial was blameless. Dissent, ¶¶ 103, 114, 164–65. That view is incorrect. The reprimand makes clear that the attorney's conduct was egregious, and that the attorney made misrepresentations to Dippel and to the court. Those claims are not in doubt here. The question is whether Industrial failed to act reasonably and prudently when it became apparent that its attorney was failing to do his job.

Moreover, the dissent fails to adequately account for the limitations inherent to the Rules of Professional Conduct for Attorneys and to disciplinary hearings, which by design do not form the basis for responsibility for the purpose of civil litigation. The preamble to SCR 20 makes this clear:

> Violation of a rule should not give rise to a cause of action nor should it create any presumption that a legal duty has been

■

¶ 69.   Additionally, Industrial bears some responsibility for the dismissal with prejudice. The circuit court initially entered an order of dismissal *without* prejudice that stated explicitly the conditions under which it would enter a dismissal with prejudice. Industrial was aware of those conditions and the consequences of failing to pay $3,926.81 in attorney's fees and re-file. Its failure to do so was neither reasonable nor prudent.[15]

¶ 70.   Industrial failed to act despite having an opportunity and instructions how to prevent its case from being dismissed with prejudice. The first order of dismissal (without prejudice) stated explicitly that "[i]f 60 days pass and the attorneys' fees are not paid and/or the case is not re-filed, then the dismissal of this case automatically will be deemed to be a dismissal with prejudice." Ultimately, however, Industrial chose to do

---

breached. The rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability.

SCR 20, Preamble (2006). The implication that the results of Industrial's attorney's disciplinary hearing ought to bear on the result of this case risks subverting the purpose of the rules by opening them to use by litigants as "procedural weapons." *Id.* *See also Yorgan v. Durkin*, 2006 WI 60, ¶ 25, n.8, 290 Wis. 2d 671, 715 N.W.2d 160; *Williams v. Rexworks, Inc.*, 2004 WI App 228, ¶ 20, 277 Wis. 2d 495, 691 N.W.2d 897.

[15] The dissent's assertions that in order to avoid a dismissal with prejudice a client must now understand, assess, and monitor the attorney "every step of the way" (dissent, ¶ 136) misinterprets our holding. It fails to acknowledge the client's responsibility for the dismissal when he had both notice of the potential of a dismissal with prejudice and a reasonable opportunity to avoid it.

neither. Finally, on December 9, 2004, the court entered a judgment of dismissal with prejudice. The order provided that the dismissal was "based on the failure to pay sanctions and to re-file the case."

¶ 71. In its dismissal of this case without prejudice the circuit court provided notice to Industrial that its case was in danger of being dismissed with prejudice. Whether a client acts reasonably and prudently depends in part on whether the client knew, or should have known, about the attorney's failures and whether the client failed to act to correct the situation when presented with an opportunity to do so. Thus, before a client is subjected to dismissal with prejudice, the client should have notice that the court is considering such a harsh sanction. Here Dippel knew that the court was considering the dismissal with prejudice sanction and was given an opportunity by the court to avoid those consequences.

¶ 72. Industrial attempts to justify its inaction by asserting that it could not comply with the conditions that the court set for avoiding the sanction of dismissal with prejudice. In its brief it argues that the court erred when it required that Industrial " 'demonstrate . . . the viability of the allegations against the Marquardt Defendants from both a factual and legal basis,' after which the circuit court might have permitted the case to be re-filed." Industrial contends that the requirement of a hearing on viability creates an undefined and impermissible barrier.[16]

---

[16] We question whether the issue of an unclear standard is ripe and should even be before us. After all, Industrial never asked for a hearing, and thus no standard—whether clearly or unclearly defined—was ever applied. Nevertheless, we determine that the context in which the viability hearing arose and

¶ 73. Industrial misconstrues the record in two respects. First, the hearing on viability was not a condition that had to be met *before* the re-filing of the case. To the extent that Industrial interprets the September 2004 order to dismiss without prejudice as setting forth such a requirement, Industrial misreads the order.

¶ 74. Additionally, the court set forth the rationale of its September 2004 order of dismissal without prejudice by incorporating into the order its August 10, 2004, written decision. In that decision the court stated:

> The motions to dismiss are granted without prejudice subject to the condition that any re-filing would require plaintiffs to pay the attorneys fees related to discovery failures. If the attorneys fees are paid and the case is re-filed, the Court requires that plaintiffs are immediately subject to a hearing to demonstrate the viability of the allegations in the complaint from a factual and legal basis before the case can proceed to any further scheduling.

¶ 75. Second, the context in which the viability hearing arose and the court's statements about such a hearing provide sufficient clarity for Industrial to proceed.[17] In its response to Industrial's complaint, Marquardt asserted the affirmative defense that

---

the court's statements about such a hearing provide sufficient clarity for Industrial to have proceeded.

[17] Admittedly, the circuit court describes the showing of viability in disparate ways. At various times it states that Industrial must "demonstrate ... the viability of the allegations ... from both a factual and legal basis"; "should be able make some kind of prima facie showing that there was merit"; should present evidence "beyond the ... allegations in the complaint"; and must make "a showing of significant merit." Nonetheless, the discussions take place within the context of plausible assertions that Industrial's claims are frivolous, and the court's

111

Industrial's claims were frivolous. Marquardt again asserted that the claims were frivolous in its motion for dismissal, summary judgment, and for sanctions filed on April 14, 2004. The memorandum in support of that motion asked for sanctions pursuant to Wis. Stat. §§ 814.025, 804.12(2), and 802.05.[18] These statutes provide for sanctions upon a determination that the claim is frivolous. A claim is frivolous if it is not well-grounded in fact or law. *Jandrt v. Jerome Foods, Inc.*, 227 Wis. 2d 531, 550, 597 N.W.2d 744 (1999).

¶ 76.   At the June 14 hearing, when weighing its options, the circuit court considered the assertions that the claims were frivolous:

> One of the things in the brief was the fact that this was frivolous . . . . If it's dismissed with prejudice, I'm not going to worry about frivolous. . . . The other option might include basically starting out with, instead of holding a merit hearing, the issue of validity, where he is to come up with the opportunity to demonstrate that this is not a frivolous case.

¶ 77.   As noted above, the court in its August 10, 2004, written decision defined what would have to be shown at the hearing as "a hearing to demonstrate the viability of the allegations in the complaint from a factual and legal basis."

---

statements all suggest that Industrial must make a showing sufficient to proceed (and not enough to succeed on the merits, for example). This provides sufficient clarity for Industrial to conclude that the showing was just enough to allay doubts that the complaint was frivolous.

[18] Section 814.025 provides that costs and attorney's fees may be imposed if the claim is deemed frivolous. Section 804.12(2) provides for a myriad of discovery sanctions, including dismissal of the action. Section 802.05 requires that a pleading be "well-grounded in fact [and] warranted by existing law or a good faith argument extending the law."

¶ 78. The issue was again discussed at the October 21, 2004, motion for reconsideration hearing. There, Marquardt's attorney explained:

> [T]he fact of the matter is this case was supposed to have had a factual and legal basis since it was filed in 2003. Having the hearing and showing that it has a factual and legal basis shouldn't be an issue for these plaintiffs. They're already supposed to have that. That's supposed to be set in stone. . . .
>
> The fact of the matter is the defendants deserve to have this matter resolved. There is no merit to this case. That's what we've been arguing from the beginning. We've actually asked for sanctions for frivolousness.

The hearing on viability was raised and discussed in the context of the assertion that Industrial's allegations were frivolous. The standard to meet the assertions of frivolousness is well defined: Industrial would only have to make a showing that its allegations had enough basis in law and fact to satisfy Wis. Stat. § 802.05.

¶ 79. The hearing on viability was not, however, a hearing on the motions for sanctions for frivolousness. Rather, given the history of this case, it was a measure tailored to forestall one of the principal harms precipitated by Industrial's actions. One year after this case had been filed, the Marquardt defendants still did not know what allegations applied to which defendants, and did not know the factual basis of Industrial's allegations. The hearing on viability was therefore less a punitive measure against Industrial than a way to mitigate future harm.[19] Because the standard Industrial would have to meet was sufficiently defined, and

---

[19] The dissent maintains that Industrial is properly seen as the victim in this case. Dissent, ¶¶ 103, 164. This ignores the larger point that it is the Marquardt defendants who have

113

because a viability hearing is an appropriate response to the particular violations of this case, Industrial's attempt to justify its inaction is unpersuasive.

¶ 80.  In imposing the sanction of dismissal with prejudice the court considered the issue of whether the client was blameless. Here the court examined the client's conduct and concluded that the client was at fault for failing to act in a reasonable and prudent manner. That conclusion is one that a reasonable judge could make. The court therefore did not erroneously exercise its discretion in dismissing the case.

## V

¶ 81.  Industrial's third argument is that the circuit court's decision to dismiss the case with prejudice was an erroneous exercise of discretion because it based

---

suffered here, and who are truly not to blame for that suffering. They have been drawn into litigation which has been protracted for reasons beyond their control, they have complied with court orders, and yet they still do not have sufficient information to determine what causes of action apply to which defendant or the factual basis of the allegations. In contrast, Industrial had the opportunity to put the litigation back on track, and to re-file the case. To allow Industrial to continue without compensating Marquardt for its reasonable attorney fees and without giving Marquardt some idea of what causes of action apply to which defendants and of the factual basis for the allegations, as appears to be the dissent's preferred route, would be to put the onus of Industrial's actions on a party that is clearly innocent of wrongdoing.

Similarly, the dissent's dissatisfaction with Industrial's choice between re-filing on condition of paying attorney fees and having a viability hearing ignores the choice from Marquardt's perspective. Dissent, ¶ 157. Allowing Industrial to simply re-file would require Marquardt to continue paying attorney fees for a lawsuit about which it did not have even basic information.

that decision on a mistake of fact. During the June 14, 2004, hearing, both plaintiff's and defendants' attorneys mistakenly stated that Dippel had been present at the February 23 hearing in which the court admonished Industrial's attorney about its discovery failures and issued the motion to compel. The court of appeals determined that the circuit court had "corrected the mistake and reasonably concluded that it was not of such importance as to upset its final determination." *Industrial Roofing Services, Inc. v. Marquardt,* No. 2005AP189, unpublished slip op., ¶ 23 (Wis. Ct. App. Dec. 28, 2005). We agree.

¶ 82. As the court of appeals noted, the circuit court addressed the mistake in the October 2004 motion for reconsideration hearing. The court acknowledged that it had been mistaken, and that Dippel "wasn't there when I gave a lecture." But, the court asked, "Does that make a difference in the Court's mind? No." Rather, it determined that the information in Dippel's affidavit provided ample reason that Industrial ought to have been aware that its attorney was not adequately attending to the case.

¶ 83. Thus, while the court was initially mistaken about Dippel's presence at the February 2004 hearing, the facts of the case provide sufficient reason for the court to conclude that Industrial had reason to be concerned about its attorney's management of the case and that Industrial did not act reasonably and prudently. Moreover, the court's remarks at the October motion hearing make it clear that it did not rely on any mistake of fact in reaching its decision to dismiss the case with prejudice. Thus, the court's decision to dismiss with prejudice was not an erroneous exercise of discretion.

115

## VI

¶ 84. We will sustain a discretionary decision so long as the circuit court has examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach. *Johnson,* 162 Wis. 2d at 273. The record reveals that the circuit court meets that standard in this case.

¶ 85. In sum, we determine that the circuit court's decision to dismiss this action with prejudice was not an erroneous exercise of discretion. The court reasonably concluded that the conduct was egregious. We acknowledge that it is an erroneous exercise of discretion for a circuit court to impose the sanction of dismissal with prejudice when the client is blameless; however, the court in this case considered Industrial's conduct in imposing the sanction and found that Industrial was not blameless. Finally, we determine that the circuit court's decision was not based on a mistake of fact. Although we depart from its application of *Johnson,* we nevertheless affirm the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 86. LOUIS B. BUTLER, JR., J. *(concurring).* I concur. This matter involves the interpretation of two of our rules, Wis. Stat. §§ (Rules) 804.12(2)(a)3. and 805.03 (2003–04).[1] Simply stated, both rules provide that when a party fails to comply with statutes governing procedure in civil actions, including an order to make or permit discovery, "the court in which the action is pending may make such orders in regard to the

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

failure as are just," including dismissing the action on the merits. Sec. 804.12(2)(a)3.; 805.03. The sanctions created by these rules contemplate an act of discretion by the court. Now, in the absence of rule changes by this court or independent legislative action, the majority abandons our precedent and strips judicial officers of the discretion clearly established by these rules to issue orders determined by them to be just. The majority concludes "it is an erroneous exercise of discretion for a circuit court to enter a sanction of dismissal with prejudice, imputing the attorney's conduct to the client, where the client is blameless." Majority op., ¶ 61. While this conclusion is well intentioned, in the absence of any change implemented as part of our rule-making procedure, I cannot join the majority opinion. I therefore write separately.

¶ 87.    This is not the first time this issue has been addressed by this court. This question was first addressed in 1991 in the case of *Johnson v. Allis Chalmers Corp.*, 162 Wis. 2d 261, 470 N.W.2d 859 (1991).

¶ 88.    In *Johnson,* the circuit court was faced with multiple violations of pretrial discovery orders during a personal injury action by the Johnsons that lasted for a period of years. *Id.* at 267–270. At the hearing on defendant Allis Chalmers' motion to dismiss,[2] Mrs. Johnson testified that she and her husband provided their attorneys with all requested materials and were unaware of the motions to dismiss filed by the defendants earlier in the case. *Id.* at 270. The circuit court nevertheless granted Allis Chalmers' motion to dismiss (and denied the motion for reconsideration as to

---

[2] A second motion had been previously granted on behalf of defendant Sperry Rand Corporation, but was being reconsidered at the hearing.

117

Sperry). *Id.* at 271–72. The court of appeals affirmed the dismissal. *Id.* at 272.

¶ 89.   This court in *Johnson* recognized that "[a] circuit court's decision to dismiss an action is discretionary," and "will be sustained [on appeal] if the circuit court has examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach." *Id.* at 273 (citations omitted). Dismissal is an erroneous exercise of discretion "if the aggrieved party can establish 'a clear and justifiable excuse' for the delay." *Id.* (citation omitted). Dismissal is also improper, that is, not just, "unless bad faith or egregious conduct can be shown on the part of the noncomplying party." *Id.* at 275 (citations omitted). This court reasoned that the sanction of dismissal will be sustained if there is a reasonable basis for the circuit court's determination that the noncomplying party's conduct was egregious and there was no clear and justifiable excuse for the party's noncompliance. *Id.* at 276–77.

¶ 90.   Applying these principles to the case before it, this court held that there was no erroneous exercise of discretion by the circuit court in dismissing the Johnsons' claims. *Id.* at 277. Of more import to the present case, this court also rejected adopting a per se rule prohibiting dismissal when the failure to comply with court orders is due to counsel's conduct and the party bears no personal responsibility for that conduct. *Id.* at 283. This court recognized that circuit courts may exercise their discretion in appropriate cases by not punishing litigants for their counsel's errors or misconduct. *Id.* at 284. This court made it clear that it placed its faith in the circuit court's judgment when the circuit court imposes sanctions upon a party. *Id.* at 286.

¶ 91. The *Johnson* court was not unanimous. Then Justice Abrahamson, in a separate concurrence, urged this court to adopt a rule that would not impute counsel's conduct to the litigant without considering the personal fault of the litigant. *Id.* at 289 (Abrahamson, J., concurring). It is that rule that we adopt today,[3] even though neither Wis. Stat. § 804.12(2)(a)3. nor § 805.03 have been substantively altered by this court or by the legislature.

¶ 92. The interpretation of statutes and court rules present questions of law that we review independently. *State v. Sorenson,* 2000 WI 43, ¶ 15, 234 Wis. 2d 648, 611 N.W.2d 240. When construing statutes and court rules, we assume that the intent of the legislature or this court is expressed in a statute or court rule. *State v. Denis L.R.,* 2005 WI 110, ¶ 35, 283 Wis. 2d 358, 699 N.W.2d 154 (citation omitted). Therefore, our analysis begins with the language of the statute or rule. *Id.* In general, we give statutory language its common, ordinary, and accepted meaning. *Id.* "Further, we consider language 'in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results.' " *Id.* (quoting *State ex rel. Kalal v. Circuit Court for Dane County,* 2004 WI 58, ¶ 46, 271 Wis. 2d 633, 681 N.W.2d 110). If this analysis yields no ambiguity, our inquiry ends. *Id.*

¶ 93. I start with Wis. Stat. § 804.12(2)(a)3. That section provides in relevant part that if a party fails to obey an order to provide or permit discovery, the court may make such orders in regard to the failure as are just, "*and among others the following:* . . . [a]n order . . .

---

[3] Majority op., ¶ 61.

119

dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party" (emphasis added). The plain language of the rule clearly contemplates a circuit court's exercise of discretion, and clearly includes the sanction of dismissal as a remedy, as the *Johnson* court so held.

¶ 94. I look next at Wis. Stat. § 805.03. That section provides in relevant part that "for failure of any party to comply with the statutes governing procedure in civil actions or to obey any order of court, the court . . . may make such orders in regard to the failure as are just, *including but not limited to orders authorized under s. 804.12(2)(a)*" (emphasis added). Once again, the plain language of the rule clearly contemplates a circuit court's exercise of discretion, and clearly includes the sanction of dismissal as a remedy, as the *Johnson* court so held.

¶ 95. A per se rule that "it is an erroneous exercise of discretion for a circuit court to enter a sanction of dismissal with prejudice, imputing the attorney's conduct to the client, where the client is blameless[,]" majority op., ¶ 61, deprives the circuit court of the very discretion provided within the statute itself. Such a rule also deprives the circuit court of a necessary tool to compel compliance with the statute by removing a critical power to sanction the noncomplying party. I see no reason to adopt such a rule now, particularly when this court has already rejected it in the past.

¶ 96. It certainly makes a difference which of the *Johnson* tests this court applies in this case. I happen to agree with now Chief Justice Abrahamson that once this court adopts the *Johnson* concurrence as the standard to be applied in this case, a reversal is warranted. First, I agree that the circuit court did not apply the test we adopt today when rendering its decision,

and by definition, therefore, its conduct was "beyond the limits of discretion." *See* dissent, ¶ 102. Second, I agree with the chief justice that Industrial Roofing (as opposed to its attorney) was blameless. *See* dissent, ¶ 103. If I were to join the majority in overruling *Johnson,* I would be forced to join the dissent in this case.

¶ 97. It is not wise to abandon precedent unless there is a compelling reason to do so. *See Johnson Controls v. Employers Ins. of Wausau,* 2003 WI 108, ¶¶ 94–95, 264 Wis. 2d 60, 665 N.W.2d 257. I find no such compelling reason in this case. Industrial repeatedly failed to comply with discovery throughout the pendency of this case. The circuit court had been made aware during the proceedings that Industrial's attorney accepted fault for not responding. The circuit court bent over backwards to bring about compliance without having to dismiss the action, postponing and ultimately denying the first motion to dismiss for noncompliance, imposing attorney's fees along the way as a sanction for noncompliance, and finally dismissing the complaint without prejudice. Even then, the circuit court allowed that Industrial could re-file if it paid Marquardt's attorney's fees of $3,926.81 within 60 days, although it would have to demonstrate the viability of the allegations against the Marquardt defendants in the complaint both factually and legally. When Industrial failed to meet the circuit court's conditions, the dismissal was then ordered with prejudice.

¶ 98. I fail to see what else the circuit court could have done. Industrial was not in compliance with the discovery orders. Progressive sanctions were being implemented, to no avail. The circuit court gave Industrial every opportunity to comply; yet compliance was not forthcoming. It was blatantly unfair to Marquardt to drag these proceedings out, without an end in sight.

121

When such an end was provided, Industrial was nonetheless given an escape clause that it did not avail itself of. Under these circumstances, and applying the *Johnson* majority analysis, I find no erroneous exercise of discretion here.

¶ 99.  I therefore respectfully concur in the mandate that affirms the decision of the court of appeals. I cannot, for the reasons stated, join the majority opinion.

¶ 100. SHIRLEY S. ABRAHAMSON, C.J. (*dissenting*).  I agree with the legal principle advanced today by the majority opinion: "[I]t is an erroneous exercise of discretion for a circuit court to enter a sanction of dismissal with prejudice, imputing the attorney's conduct to the client, where the client is blameless." Majority op., ¶ 60.

¶ 101.  I disagree, however, with the application of the legal principle in the present case, and I therefore dissent.

¶ 102.  The circuit court did not apply this legal principle but cited to and applied the majority opinion in the *Johnson* case, which allowed the circuit court to impose sanctions on a blameless client. The circuit court therefore exercised its discretion upon an error of law. "If a judge bases the exercise of his discretion upon an error of law, his conduct is beyond the limits of discretion."[1] The majority insists that, while not required by *Johnson,* the circuit court nonetheless examined Industrial's blameworthiness before imposing the sanction. I disagree. Nevertheless I will discuss this case as the majority does, as if the circuit court applied the legal principle advanced by the majority opinion.

[1] *State v. Hutnik,* 39 Wis. 2d 754, 763, 159 N.W.2d 733 (1968), *quoted in Kenosha Hosp. & Med. Ctr. v. Garcia,* 2004 WI 105, ¶ 15, 274 Wis. 2d 338, 683 N.W.2d 425.

¶ 103. Industrial was blameless.[2] The record makes this fact clear and the subsequent public reprimand of Industrial's counsel reinforces this fact.[3] The court-appointed referee saw Industrial as free of blame. The circuit court and the majority opinion have transformed the client as a victim into the client as a perpetrator.

¶ 104. Evidence of the circuit court's erroneous exercise of discretion in dismissing this case with prejudice permeates the record. I describe separately six aspects in which the circuit court erred in dismissing the cases. The following six errors are, however, interrelated:

(I) The circuit court did not exercise its discretion by examining the relevant facts, by applying a proper standard of law, and by using a demonstrated rational process;

(II) Industrial is a blameless client whom the circuit court and the majority opinion have transformed into a perpetrator;

(III) Viewing the client's (Industrial's) conduct as blameworthy distorts the traditional lawyer-client relationship;

(IV) The circuit court erroneously exercised its discretion in refusing to give Industrial's new counsel the opportunity to be heard when the circuit court was still undecided about the sanctions to be imposed;

---

[2] Keith Dippel is the president of Industrial. Both Dippel and Industrial are plaintiffs in this lawsuit, and the same attorney represented both. For purposes of review, my references to Industrial generally include both plaintiffs.

[3] Industrial's counsel was publicly reprimanded by a referee under SCR:22.09 for his conduct in this case. The reprimand number is 2006–OLR-12 and the full text of the reprimand is available at http://www.wicourts.gov/services/public/lawyerreg/statusreprimands.htm.

(V) Imposing a requirement of a "hearing on viability" as a sanction for discovery violations is imposing a requirement unknown to the law, the parties, the circuit court, and the majority opinion; and

(VI) Because Industrial could not comply with the circuit court's mandate that Industrial pay the attorney's fees, re-file the case, and succeed at a hearing on viability without jeopardizing its appeal rights, the circuit court's mandate was an erroneous exercise of discretion.

¶ 105.   I will address each of these incidents of the erroneous exercise of discretion in turn, after first providing a timeframe of the relevant events.

- On June 19, 2003, Industrial's counsel commenced the present action.

- In July and August 2003, several defendants moved to dismiss, alleging lack of personal jurisdiction. Argument was schedule for October 27, 2003.

- Industrial's counsel failed to timely serve his client's response, causing the October 27, 2003 hearing to be continued to November 17, 2003. Industrial's president, Keith Dippel, attended the October 27, 2003 hearing with counsel.

- At the November 17, 2003 hearing, Industrial's counsel was successful in defeating the defendant's jurisdictional motion. The circuit court awarded attorney's fees to the defendants for Industrial's untimely response to the motion, and Industrial's counsel offered to pay them personally. Keith Dippel attended the November 17, 2003 hearing with counsel.

- At the November 17, 2003 hearing, the circuit court also entered a scheduling order requiring Industrial

124

and the defendants to produce witness lists by March 30, 2004 and July 2, 2004, respectively. The circuit court ordered discovery closed by September 1, 2004 and dispositive motions filed by September 15, 2004.

- In the interim, the parties exchanged discovery requests. On August 28, 2003, the Clark defendants served Industrial with document requests, interrogatories, and requests for admission. On September 19, 2003, the Marquardt defendants served document requests and 26 interrogatories. Industrial responded to these requests on September 30, 2003 and October 22, 2003, respectively, but objected to some of the requests and interrogatories.

- On January 15, 2004, the Marquardt defendants served "replacement interrogatories" in lieu of the 268 interrogatories previously served. They also served 93 new requests for admission.

- On January 23, 2004, the defendants filed a motion to compel discovery.

- On February 19, 2004, Industrial's counsel responded by filing a motion for a protective order. Industrial's counsel and Keith Dippel also prepared and served supplemental responses to some of the interrogatories and requests for admission that were the subject of the motion to compel. Industrial's counsel served them prior to the February 23, 2004 hearing on the motion for a protective order.

- During the February 23, 2004 hearing, a discussion was had concerning the inadequacy of Industrial's responses. Attorney's fees were awarded, and harsher sanctions were threatened. The circuit court ordered Industrial to comply with the remaining discovery requests by March 1, 2004. Keith Dippel was not present at this hearing. Industrial's

125

counsel did not inform Industrial of the court orders entered on February 23, 2004.

- On March 22, 2004, Industrial answered the Marquardt defendants' requests for admissions.

- Between April 14 and May 17, 2004, the defendants filed motions to dismiss the case, to impose sanctions, and for summary judgment, based on Industrial's continued failure to comply with discovery requests and orders. Industrial's counsel did not respond to these motions.

- A hearing was held on June 14, 2004 on the defendants' motions. Industrial's counsel did not inform Industrial of this hearing. Industrial's counsel confessed in open court his personal problems, accepted blame for the failure to comply with discovery, and asked the circuit court to allow time for Industrial to retain new counsel. Industrial's counsel, however, deceived the circuit court about Industrial's knowledge of the hearing that day, of the discovery orders, and of counsel's failure to comply with discovery orders. The circuit court indicated it was contemplating sanctions.

- On June 15, 2004, Industrial's counsel advised Industrial he was resigning as counsel, without explaining to Industrial the events of the prior day. Industrial immediately hired new counsel, who, upon learning of the June 14, 2004 hearing, filed on June 24, 2004 an affidavit and requested a status conference to address the pending motions and possible sanctions.

- Industrial's original counsel delayed turning over the files to new counsel.

- On June 29, the circuit court denied the request for a status conference.

- On August 10, 2004, without hearing argument or evidence from Industrial's new counsel, the circuit

126

court ruled that it would dismiss Industrial's case with prejudice unless Industrial paid the defendants' attorney's fees and refiled the case within 60 days, and thereafter satisfied the circuit court at a "hearing on viability."

- On October 21, 2004, the circuit court finally heard arguments from Industrial's new counsel in the context of a motion for reconsideration; the motion for reconsideration was promptly denied at the end of the hearing.

- On November 11, 2004, Industrial's new counsel petitioned for leave to appeal the circuit court's August 10 decision, which the court of appeals denied.

- On December 9, 2004, Industrial's complaint was dismissed with prejudice.

¶ 106. As this timeline demonstrates and the following discussion illustrates, Industrial is a victim of its lawyer's misrepresentations.

I

¶ 107. The circuit court did not exercise its discretion by examining the relevant facts, by applying a proper standard of law, and by using a demonstrated rational process, as the majority opinion requires. Majority op., ¶ 40.

¶ 108. The majority opinion cobbles together miscellaneous statements in the record and fashions them into a story of noncompliance in the discovery process amounting to the circuit court's finding egregious attorney conduct. But do not be fooled. This is the majority opinion's story, not the facts and reasoning of the circuit court.

127

¶ 109. The circuit court ordered dismissal in a written decision on August 10, 2004. In its written decision, the circuit court did not specify the basis for this ruling and instead referred to its findings in a June 14, 2004 hearing: "The Court at the previous hearing has established findings sufficient for a sanction. The Court will not repeat the determinations made at that time."[4]

¶ 110. It is not clear, however, from the transcript of the June 14, 2004 hearing what "findings" the circuit court made, what legal principle it relied on, and what its decision-making process was. There is no clearly articulated explanation as to why this particular sanction was warranted. The circuit court was not required to employ any magic language, such as the word 'egregious' or 'extreme' (although if a circuit court expressly articulates the proper standard of law it is more likely to reach a correct result and appellate review of the exercise of discretion is easier).

¶ 111. Moreover, the circuit court's language is open to interpretation. For instance, the majority opinion insists that the circuit court was aghast at the egregiousness of the conduct. Yet, it is just as plausible that the circuit court was surprised because it was the first time in the circuit court's experience that a lawyer accepted full responsibility and blame for the "litany of failures" in discovery, and because the lawyer said he intended to wind down his litigation practice and seek professional help. The circuit court (and indeed the defendants' counsel) were at a loss at how to proceed under these circumstances.[5]

---

[4] Record of June 14, 2004, set forth in Appendix to Brief of Plaintiffs-Appellants-Petitioners at P-App 032–036.

[5] After Industrial's counsel explained his personal problems and accepted full responsibility for the failure to comply with

¶ 112.  In sum, it was an erroneous exercise of discretion for the circuit court to fail to state clearly its findings and reasoning on the record.

II

¶ 113.  According to the majority opinion, a circuit court imputes an attorney's egregious misconduct to a client after considering "the client's failure to act in a reasonable and prudent manner, and the client's knowledge of or complicity in that conduct." Majority op.,

discovery requests and orders, the circuit court contemplated how to proceed with the case, musing that:

> Okay. Well, certainly from the record here something was wrong. Because I hadn't seen, you know, a lack of response before in any other case; so there was something wrong and didn't know where it was coming from, didn't have enough information, just like everybody else under the circumstances.

> So, at this point and certainly from the facts here, it fits into all the major sanction cases as far as that goes. Okay. My reaction is, and usually, you know, you don't have a situation where you do have a situation where you can say, okay, the sanction is this. And, you know, the fault lies here, with the client versus the attorney or with the attorney versus the client. And there are provisions for that under the circumstances.

> So, under the circumstances, my question is—I've never had a situation like this. Maybe that's because I've never seen the lack of response in—you stated it's your personal problem and it's your fault. So in other cases where we have a lack of response in certain areas, we grant the sanction.

> Under the circumstances, does anybody have any statement they want to make?

The circuit court was seemingly wrestling with how to proceed given the unique circumstances of the case and the attorney's assumption of full responsibility for the discovery violations. Ordinarily sanctions may be called for on violation of a court order, but the circuit court was obviously unsure whether they were appropriate here.

¶ 62. A circuit court considers whether "the client has acted as a reasonable and prudent person in engaging a lawyer of good reputation, has relied upon him to protect his rights, and has made a reasonable inquiry concerning the proceedings."[6] The circuit court—and the majority opinion—did not properly apply this standard.

¶ 114.   It is clear here that the faults were with the attorney, not the client. Industrial's attorney admitted personal blame for all failures to provide discovery. Repeatedly, the attorney explained how the blame rested solely with him:   "Because as I say, my client has not been the source of the problem. It has been my, just my inability to focus on my practice like I should have." The attorney further described how "[m]y client wants to prosecute the case." The Office of Lawyer Regulation (OLR) and a referee in the discipline case against Industrial's attorney have accepted the attorney's ownership of responsibility, agreeing that the attorney is solely responsible for the discovery violations, and the attorney has since been publicly reprimanded.[7]

¶ 115.   At the June 14, 2004 hearing, the circuit court noted only two possible faults of the client. Neither was sufficient to find Industrial's conduct unreasonable or imprudent.

¶ 116.   First, the circuit court was concerned because Industrial's president, Keith Dippel, had not yet attended a deposition and had not rescheduled a previously cancelled deposition. The record makes clear that Dippel was not at fault. Industrial's counsel cancelled the deposition and counsel accepted responsibility for

---

[6] *Charolais Breeding Ranches, Ltd. v. Wiegel,* 92 Wis. 2d 498, 514, 285 N.W.2d 720 (1979).

[7] *See* SCR:22.09.

the other scheduling difficulties, stating, "[I]t was my failure." He explained further: "I wasn't in a position to prepare the client. Again, it was my fault." Later in the hearing, counsel once again assumed blame: "The responsibility for that second deposition not occurring was mine. I don't think Mr. Dippel would have been resistive to it." Industrial had no role in the discovery violations.

¶ 117. Second, the circuit court was concerned because Mr. Dippel had failed to attend the June 14, 2004 hearing. Counsel explained that the absence was due to out-of-town business obligations. This explanation was a lie; the truth was that counsel had not told Dippel of the hearing. In any event, there had been no court order or request for Dippel's personal attendance prior to this hearing.

¶ 118. The circuit court erred when it ruled that Industrial was alerted to counsel's ineptitude prior to June 15. The basis of the circuit court's error is clear and on the record. Dippel attended the hearing on November 17, 2003, but that hearing was not sufficient to serve notice. At that hearing, the circuit court ordered payment of attorney's fees as a sanction for Industrial's counsel's failure to respond to a motion. Industrial's counsel accepted blame, claiming it was a "mailing snafu," and offered to pay the sanction personally.

¶ 119. This incident did not provide notice to Industrial that its lawyer was engaging in egregious conduct. At best, Industrial learned that the attorney had blundered once, quickly accepted blame, and promised not to let it happen again. Industrial reasonably could have viewed counsel's conduct as a minor glitch that was going to be repaired.

¶ 120. The circuit court mistakenly thought Dippel was at a hearing on February 23, 2004, wherein the circuit court threatened more severe sanctions if Industrial's attorney failed to comply with discovery requests. In actuality, Dippel was not present at that hearing, nor was he privy to the circuit court's admonishments. Industrial thus could not have been "on notice" because of this hearing.

¶ 121. The record demonstrates that Industrial acted in a responsible and prudent manner, both in engaging and in relying on counsel. Industrial reasonably relied on the lawyer to protect its rights and made reasonable inquiry concerning the proceedings.

¶ 122. Without these reasons to find Industrial knowledgeable of or complicitous with its attorney's conduct, the majority opinion asserts that the circuit court relied on the Dippel affidavit, dated June 24, 2004, and filed by new counsel on that date, requesting an opportunity to be heard before the circuit court on possible sanctions. Majority op., ¶ 63 n.12.

¶ 123. The affidavit explains that the present case was the first lawsuit Dippel was involved with and that he is not knowledgeable about legal proceedings; that he discussed the various proceedings with counsel numerous times; that he pressed the attorney to meet the scheduling timetable; that he sent the attorney responses and documents in response to discovery requests; that during February, March, and April he made repeated phone calls, sent e-mails to the attorney, and visited the attorney's office regarding the status of the case; that he received reassurances from the attorney that matters were proceeding; and that the attorney did not advise Industrial until June 15 that he could no longer represent Industrial because of personal issues.

132

¶ 124. The affidavit was filed to show that the attorney had blatantly lied to the circuit court on June 14 when he claimed that he had advised Industrial of his personal problems and the problems with discovery. The affidavit also demonstrated that Industrial was a reasonable and prudent client following the progress of its case and keeping lines of communication open with counsel.

¶ 125. The circuit court's only reference to the affidavit in its August 10 decision states as follows: "The subsequent contacts [after November 17] Mr. Dippel had with [counsel] should have raised suspicion as to his abilities to prosecute the case. The affidavit contains many contacts and questions of [counsel] by Mr. Dippel. Merely because he relied on [counsel's] assurance that things were being taken care of does not exonerate Mr. Dippel from the consequences and sanctions."[8]

¶ 126. Under these circumstances the circuit court should not have ruled on the sanctions without a hearing. As the majority opinion acknowledges, majority op., ¶ 63 n.12, "on the motion for sanctions, if there are disputed facts or disputed inferences from the facts an evidentiary hearing, rather than simply oral argument based on briefs, affidavits and depositions, is necessary to resolve these disputes. *See State v. Jason R.N.,* 201 Wis. 2d 646, 648, 549 N.W.2d 752, 753 (Ct. App. 1996)."[9]

¶ 127. In the present case there are disputed facts. The statements of Industrial's counsel to the circuit court about Industrial's knowledge of the proceedings differ from Mr. Dippel's affidavit stating

[8] In any event, I do not agree with the circuit court. I think that a client can rely on an attorney's reasonable assurances at least for a reasonable time. *See* Part III, *infra.*

[9] *See also Garfoot v. Fireman's Fund Ins. Co.,* 228 Wis. 2d 707, 725 n.8, 599 N.W.2d 411 (1999).

133

Industrial's knowledge; the circuit court expressed concern about this dispute. Furthermore, more than one reasonable inference can be drawn from the affidavit about whether Industrial was prudent and therefore as a matter of law was blameworthy. The circuit court erroneously exercised its discretion in refusing to give Industrial's new counsel an opportunity to present Industrial's position. *See* majority op., ¶ 63 n.12.

¶ 128.  Industrial finally got a hearing, but was not given the opportunity to produce evidence. At the October reconsideration hearing, Industrial's new counsel advised the circuit court of the disputed facts and inferences evidenced in the affidavit. If the attorney's lying to the client and the client's repeated efforts to keep abreast of the case would not change the circuit court's mind, what facts are left to show Industrial was blameless?

¶ 129.  In sum, the circuit court and majority opinion are wrong to impute the attorney's conduct to Industrial because (1) the lawyer continually lied to or kept information from Industrial; (2) Industrial did not know or have reason to know of any egregious conduct until the attorney advised Industrial after the June 14 hearing to retain new counsel; (3) Industrial's reliance on its attorney under the circumstances in the case was justified; and (4) Industrial acted promptly to address the problem when it became aware of the problem. Industrial is the victim, not the perpetrator.

III

¶ 130.  Viewing Industrial's conduct as blameworthy distorts the traditional lawyer-client relationship.

¶ 131.  Industrial was simply trusting its lawyer to take care of its case, as clients generally do. "[T]o impose the punishment for the lawyer's failure to

134

prosecute on the plaintiff who . . . was simply trusting his lawyer to take care of his case as clients generally do" is to ignore "the practicalities and realities of the lawyer-client relationship."[10]

¶ 132. The traditional lawyer-client relationship assumes that while the client sets the goals for representation, the lawyer manages the case. The Code of Professional Responsibility recognizes that clients often lack the training or knowledge to understand the technical aspects of their cases: "In litigation a lawyer should explain the general strategy and prospects of success and ordinarily should consult the client on tactics that might injure or coerce others. On the other hand, a lawyer ordinarily cannot be expected to describe trial or negotiation strategy in detail." SCR 20:1.4, Comment.[11] The Code also states that "[i]n questions of means, the lawyer should assume responsibility for technical and legal tactical issues . . . ." SCR 20:1.2, Comment.[12]

¶ 133. In short, "[a] lawyer's work is sometimes complex and technical, often is performed in the client's absence, and often cannot properly be evaluated simply by observing the results."[13]

---

[10] *Link v. Wabash R.R. Co.*, 370 U.S. 626, 643, 646 (1962) (Black, J., dissenting).

[11] *See also* Restatement (Third) of the Law Governing Lawyers § 20 cmt. (2000) ("Legal representation is to be conducted to advance the client's objectives, but the lawyer typically has knowledge and skill that the client lacks and often makes or implements decisions in the client's absence.").

[12] *See also* Restatement (Third) of the Law Governing Lawyers § 21 cmt. (2000) ("Such matters often involve technical legal and strategic considerations difficult for a client to assess.").

[13] Restatement (Third) of the Law Governing Lawyers § 16 cmt. (2000).

¶ 134. Discovery is one of the many complex aspects of a successful litigation. It involves complying with local rules that are technical and formalistic: limited requests, special forms, certain deadlines. In involves exactly the "technical legal and strategic considerations difficult for a client to assess."[14] These technical aspects of a case ordinarily fall within the lawyer's, not the client's, expertise.

¶ 135. Industrial did what is traditionally required of a client; it kept asking questions and got what seemed like reasonable explanations. "[A] layperson ordinarily cannot be expected to supervise his or her attorney through every pretrial phase of litigation. A litigant may make appropriate inquiry and be victimized by counsel."[15] What would the majority opinion have had Industrial do to prevent being deceived by his attorney? Hire another attorney to audit the first one?

¶ 136. With its opinion today, the majority now expects the client to understand and assess the lawyer's ability to conduct discovery every step of the way. The circuit court and the majority opinion demand that a client engage in an unreasonably high level of supervision of an attorney and that a client respond rapidly should any question emerge about counsel's conduct of discovery. To expect clients to keep such a close guard over their attorneys and any problems that may arise and to hire new counsel immediately upon the development of a problem is unrealistic and unfair.

¶ 137. As a result of the majority opinion, clients are now obligated to monitor due dates for discovery

---

[14] Restatement (Third) of the Law Governing Lawyers § 21 cmt. (2000).

[15] *Johnson v. Allis Chalmers Corp.*, 162 Wis. 2d 261, 290, 470 N.W.2d 859 (1991) (Abrahamson, J., concurring).

and examine whether the materials provided by counsel are responsive. The client can no longer just generally keep abreast of the case. The client must make detailed inquiries and check with court records, not take the lawyer's word. Unless the client so acts, the client risks being deemed blameworthy, having its case dismissed with prejudice, and being ordered to pay legal fees to opposing counsel.

¶ 138.  In sum, I conclude that imputing the conduct of Industrial's counsel to Industrial under the circumstances of the case at bar for the purposes of the sanction of dismissal with prejudice is an erroneous exercise of discretion as a distortion of the lawyer-client relationship.

## IV

¶ 139.  The circuit court erroneously exercised its discretion in refusing to grant Industrial a hearing with its new counsel while the circuit court was still undecided about the sanction for the previous counsel's misconduct.

¶ 140.  The circuit court had plenty of opportunities and time to hear from Industrial and its new counsel prior to entering the dismissal without prejudice. At the start of the June 14, 2004 hearing, Industrial's counsel apologized for his failures and, at more than one point, asked the court for time to allow Industrial to retain new counsel to respond to the pending motions and to postpone any decision until new counsel could participate on behalf of Industrial.

¶ 141.  The circuit court denied Industrial's counsel's requests, announcing that "it's not going to take me long" to make a ruling on the sanctions.

137

¶ 142. Nevertheless, nearly two months lapsed before the circuit court issued its ruling of dismissal on August 10, 2004.

¶ 143. In the interim, Industrial had promptly hired new counsel within a week of the June 14, 2004 hearing. New counsel acted on June 24, 2004, filing Keith Dippel's affidavit and requesting a status conference to discuss the progress of the case, including the sanctions. The circuit court denied that request on June 29, 2004. The June 29, 2004 order denying new counsel's request for a status conference states: "The Court will not set a status conference until it has decided the motions to dismiss." The circuit court did not render its decision on the sanctions until nearly a month and a half later.

¶ 144. As a result of the circuit court's refusal to hear from new counsel, Industrial did not have the same opportunity as the numerous counsel for the numerous defendants did to recommend sanctions or to argue about the course the circuit court should take with regard to the disputed facts in issue and disputed inferences from the facts in issue (*see* Part II, *supra*).

¶ 145. The circuit court should not have ruled on the sanctions without a hearing, as the majority opinion acknowledges. Majority op., ¶ 63 n.12.

¶ 146. Industrial's new counsel was given the opportunity to explain the Dippel affidavit and Industrial's position only on October 21, 2004 when the circuit court heard arguments on Industrial's motion for reconsideration. By then the circuit court had already ruled on the matter several times and might not be inclined to admit error or change its mind. It comes as no surprise, then, that the circuit court dismissed the importance of any disputes of facts by saying whatever the facts, it would not have changed its mind.

¶ 147. In sum, the circuit court put itself in the situation of having heard from several counsel opposing Industrial and from Industrial's counsel who admitted that the misconduct was all his fault (and lied to the circuit court that he had advised his client of the problems and to get a new attorney) but refused to hear from Industrial. The circuit court shut itself off from a valuable source of information necessary to tailor an appropriate sanction. The failure to give Industrial an opportunity to present evidence and be heard on how to resolve the dispute was not fair process and was an erroneous exercise of discretion.

V

¶ 148. Requiring a "hearing on viability" as a sanction for discovery violations is imposing a requirement unknown to the law, the parties, and the majority opinion. The circuit court ordered Industrial to demonstrate "viability" immediately after re-filing and before any further scheduling of the case. This creative sanction cannot be satisfied because no one knows what it means.

¶ 149. The circuit court failed to describe the objective and nature of a "hearing on viability." Amazingly, the majority opinion is not troubled by the circuit court's failure to establish even the vaguest structure for this "hearing on viability."

¶ 150. The circuit court failed to articulate a clear legal standard governing the "hearing on viability." When first formulating the idea of a viability hearing at the June 14, 2004 hearing, the circuit court described it as "instead of holding a merit hearing, the issue of validity, where [Industrial] is to come up with the opportunity to demonstrate that this is not a frivolous

139

case." In its August 10, 2004 decision, the circuit court ordered "a hearing to demonstrate the viability of the allegations in the complaint from a factual and legal basis."

¶ 151. The majority opinion magically distills from these vague statements a "well defined" standard. Majority op., ¶ 77. Even more remarkably, the majority opinion announces that this viability hearing is at the same time a hearing for frivolousness under Wis. Stat. § 802.05 and not such a hearing. I am sympathetic with the majority opinion: It needs to locate a clear legal standard for this viability hearing but does not want to get into the frivolousness thicket. Majority op., ¶ 78.

¶ 152. So what is this "hearing on viability"? It is not a hearing on a motion to dismiss for failure to state a claim. The complaint does state a claim. Is it the circuit court's order to make the complaint more definite and certain? The defendants could have made such a motion but did not. Industrial probably cannot make the complaint more definite and certain because its delinquent counsel failed to engage in discovery. The majority opinion attempts to characterize this hearing as a preventative measure "to mitigate future harm" but does not explain why the circuit court should attempt to mitigate future harm through such an ill-defined device. The "hearing on viability" seems to be just a different way of punishing Industrial for its counsel's misconduct.

¶ 153. The circuit court has discretion in ordering sanctions for a party's misconduct and may tailor the sanction to the needs of a particular situation. This discretion is not, however, unfettered. Wisconsin Stat. §§ 804.12(2)(a) and 805.03 (2003–04) limit the sanctions to those that are "just." An undefined condition

not governed by any legal principle cannot be a "just" sanction. No one has any clue how to satisfy the condition.

¶ 154.   I am at a loss to explain to circuit courts or litigants how to conduct a "hearing on viability." Or to explain to an appellate court how to review a decision in a viability hearing. The majority opinion certainly does not provide an answer.

¶ 155.   In sum, the circuit court erroneously exercised its discretion in conditioning a refiling by requiring a "hearing on viability."

## VI

¶ 156.   The circuit court's mandate that Industrial pay the attorney's fees, refile the case, and succeed at a hearing on viability was an erroneous exercise of discretion.

¶ 157.   The circuit court gave Industrial two options:   (1) pay the attorney fees and refile with a hearing on viability; or (2) have the case dismissed with prejudice. Some choice!

¶ 158.   The majority opinion narrowly focuses on Industrial's decision not to pay attorney's fees and refile, insisting this omission (which resulted in a dismissal with prejudice) demonstrates that Industrial was not reasonable and prudent and thus was blameworthy. The circuit court placed Industrial in an impossible situation when it entered the dismissal without prejudice with these conditions.

¶ 159.   In any event, the majority opinion seems to view the order to pay less than $4,000 as a nuisance payment that Industrial should just pay and go on with the matter. If a larger sum were involved, I suspect that

the majority opinion would reach a different conclusion. From my perspective, however, the amount should not be the key factor.

¶ 160.   If Industrial paid this fee and refiled its complaint, it is not clear what Industrial's rights on appeal might be and whether the circuit court would stay its proceedings pending appeal. Industrial discussed its potential appeal rights at length with the circuit court at the October reconsideration hearing and no one seemed to know how to resolve the appeal issues.

¶ 161.   On October 11, 2004, Industrial filed a petition with the court of appeals for leave to appeal the orders dismissing the case without prejudice. On November 11, 2004, the court of appeals held the request in abeyance, reasoning that if Industrial did not refile the case within the 60–day window, a dismissal with prejudice would be entered and that this final judgment could be appealed as a matter of right.

¶ 162.   If Industrial wanted to challenge the circuit court's initial sanction and was rightfully concerned about taking its chances on a hearing on viability, whatever that is, it seems to me its safest course was not to pay the attorney fees, not to refile, and not to go into a viability hearing.

¶ 163.   In sum, the circuit court erroneously exercised its discretion when it conditioned the dismissal without prejudice on Industrial's meeting the three requirements it established.

\* \* \* \*

¶ 164.   For the reasons set forth, I conclude that the circuit court erroneously exercised its discretion in dismissing the claim with prejudice and denying Indus-

trial its day in court. As a result, Industrial, a blameless client in my view, has lost its opportunity to pursue its claims against the defendants for their allegedly ongoing wrongful conduct. Industrial, the victim, has been transformed into a perpetrator.

¶ 165. The public reprimand of Industrial's counsel demonstrates that Industrial's attorney deceived Industrial, hiding relevant information about the case, his misconduct, and Industrial's blamelessness. Although a public reprimand does not serve as a basis for an attorney's civil liability,[16] the public reprimand against the attorney states that the "[i]mposition of this public reprimand is conditioned on [the attorney's] assumption of responsibility for any sanctions imposed against the plaintiffs [Industrial and Dippel] in the underlying litigation as a result of his misconduct."[17]

¶ 166. I do not know how valuable the attorney's assumption of responsibility for any sanctions imposed on Industrial is. I do not know whether the attorney is judgment-proof, has assets, or has malpractice coverage. I wonder whether a malpractice suit will provide Industrial sufficient relief, especially when the majority opinion has characterized Industrial as a blameworthy participant.

¶ 167. For the reasons set forth, I dissent.

¶ 168. I am authorized to state that Justices DAVID T. PROSSER, JR. and PATIENCE DRAKE ROGGENSACK join this opinion.

---

[16] SCR 20, Preamble (2006).

[17] Wis. Sup. Ct. Office of Lawyer Regulation Public Reprimand No. 2006–OLR-12, at 9.