# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2023AP441 |

| | |
|---|---|
| COMPLETE TITLE: | In re the termination of parental rights to P. M., a person under the age of 18:<br><br>State of Wisconsin,<br>    Petitioner-Respondent,<br>  v.<br>R. A. M.,<br>    Respondent-Appellant. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 408 Wis. 2d 794, 994 N.W.2d 18
(2023 - unpublished)

| | |
|---|---|
| OPINION FILED: | June 25, 2024 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | January 24, 2024 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Milwaukee |
| JUDGE: | Ellen R. Brostrom |

JUSTICES:
KAROFSKY, J., delivered the majority opinion of the Court, in which ANN WALSH BRADLEY, REBECCA GRASSL BRADLEY, DALLET, and PROTASIEWICZ, JJ., joined. ZIEGLER, C.J., filed a dissenting opinion in which HAGEDORN, J., joined.
NOT PARTICIPATING:

ATTORNEYS:

For the guardian ad litem, there were briefs filed by *Courtney L.A. Roelandt* and *The Legal Aid Society of Milwaukee, INC., Milwaukee*. There was an oral argument by *Courtney L.A. Roelandts*.

For the petitioner-respondent, there was a brief filed by *Jenni S. Karas,* assistant district attorney. There an oral argument by *Jenni S. Karas,* assistant district attorney.

For the respondent-appellant, there was a brief filed by *Pamela Moorshead*, assistant state public defender. There was an oral argument by *Pamela Moorshead*, assistant state public defender.

**2024 WI 26**

NOTICE

This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.

No.  2023AP441
(L.C. No.  2021TP159)

STATE OF WISCONSIN            :      IN SUPREME COURT

**In re the termination of parental rights to P. M., a person under the age of 18:**

**State of Wisconsin,**

　　　　**Petitioner-Respondent,**

　　**v.**

**R. A. M.,**

　　　　**Respondent-Appellant.**

**FILED**

**JUN 25, 2024**

Samuel A. Christensen
Clerk of Supreme Court

KAROFSKY, J., delivered the majority opinion of the Court, in which ANN WALSH BRADLEY, REBECCA GRASSL BRADLEY, DALLET, and PROTASIEWICZ, JJ., joined. ZIEGLER, C.J., filed a dissenting opinion in which HAGEDORN, J., joined.

REVIEW of a decision of the Court of Appeals. *Affirmed*.

¶1  JILL J. KAROFSKY, J.  This case concerns whether the circuit court[1] lawfully terminated R.A.M.'s parental rights.  Our

_____

[1] The Honorable Ellen R. Brostrom of the Milwaukee County Circuit Court presided.

task is to interpret Wis. Stat. § 48.23(2)(b)3. (2021-22)[2] in order to answer two questions. First, was the court required to wait at least two days before proceeding to a dispositional hearing once the court found R.A.M.'s conduct in failing to appear as ordered was "egregious and without clear and justifiable excuse"? And second, did the court lack competency to conduct the dispositional hearing because it failed to wait the statutorily mandated two days before proceeding? We hold that the circuit court was statutorily bound to wait at least two days before holding a dispositional hearing under § 48.23(2)(b)3. Because those two days are central to the statutory scheme in ch. 48, the circuit court lacked competency when it proceeded to the dispositional phase without abiding by the statutorily mandated waiting period. Therefore, R.A.M. is entitled to a new dispositional hearing.

## I. BACKGROUND

¶2 R.A.M. is the parent of P.M., a son born in February 2015.[3] In 2017, a police officer who was already in R.A.M.'s apartment building for an unrelated reason heard a woman shouting, a child crying loudly, and a loud thump, after which he said the child became louder. The officer knocked on the door, and R.A.M. allowed the officer to enter the residence. The officer found P.M. with scratches, bruising, and bleeding

---

[2] All subsequent references to the Wisconsin Statutes are to the 2021-22 version.

[3] P.M.'s father passed away in 2020, and his rights are not at issue in this case.

from the nose. R.A.M. was the only adult present at the time of the incident. She was subsequently convicted of one count of Child Abuse——Recklessly Causing Harm, and was sentenced to one year of initial confinement and two years of extended supervision. Immediately following the incident, the State placed P.M. in foster care. In 2019, P.M. was placed with his paternal uncle, with whom he continues to reside.

¶3 The State filed the present petition for the termination of R.A.M.'s parental rights in 2021, after P.M. had resided outside of R.A.M.'s home for more than three years. The grounds for the petition were that P.M. was a child with a continuing need for protection and services (CHIPS) under Wis. Stat. § 48.415(2) and that R.A.M. had failed to assume parental responsibility under § 48.415(6). R.A.M. contested both grounds, and a court trial began on March 28, 2022. Two additional hearing dates were set in March and April of 2022, both of which R.A.M. attended. When more time was needed to conclude the grounds phase and hold a dispositional hearing,[4] the court set three more dates in July (5, 6 and 15).

¶4 On July 5, 2022, R.A.M. failed to appear in court. The parties disagree as to the cause of R.A.M.'s absence; however, there is no dispute that the judge had previously

---

[4] Termination of parental rights cases proceed in two phases. In the grounds phase of the proceeding, the petitioner must prove by clear and convincing evidence that at least one of the grounds for termination of parental rights enumerated in Wis. Stat. § 48.415 exists. If the petitioner does so, the case proceeds to the dispositional phase, where the court must determine whether the termination of parental rights is in the best interest of the child. Wis. Stat. § 48.426(2).

issued a standing order requiring R.A.M. to attend all court appearances or risk being found in default. When R.A.M. did not appear, the State and the guardian ad litem asked the court to enter a default judgement against R.A.M. in the grounds phase. The circuit court made the following finding:

> [S]he was ordered to be here this morning and we can't proceed on the merits without her. The State is prejudiced in not being able to finish its cross-examination. I think she's misleading the Court; I think she's misleading [her counsel] in her version of the events. And I do find that to be egregious and bad faith and without justification.

The court then granted the Petitioners' motion for default judgment.[5]

¶5 At the conclusion of the grounds phase, the court found that the State proved by clear and convincing evidence both a continuing need for CHIPS and a failure to assume parental responsibility. As a result, the court determined that R.A.M. was an unfit parent.

¶6 The court immediately moved to the dispositional phase and concluded the dispositional hearing on that same day without R.A.M. present.[6] The court found that termination would be in the best interest of P.M. and ordered the termination of R.A.M.'s parental rights.

---

[5] R.A.M. does not challenge the egregiousness finding, so we do not examine that issue here.

[6] The court held the dispositional hearing on July 5, even though it had reserved two other days in July to potentially accommodate a dispositional hearing and had assured R.A.M.'s attorney that R.A.M. would be not be precluded from participating were she to appear in court the following day.

4

¶7 R.A.M. appealed, and the court of appeals reversed the order terminating her parental rights. That court held that the circuit court lost competency when it proceeded to the dispositional hearing on the same day that the grounds phase concluded. The court of appeals also held that R.A.M.'s due process rights were violated. The case was remanded to the circuit court with instructions to hold a new dispositional hearing. Subsequently, the guardian ad litem filed a petition for review, which this court granted.

## II. ANALYSIS

¶8 We begin by interpreting Wis. Stat. § 48.23(2)(b)3., and determine that the circuit court was required to wait at least two days after finding R.A.M.'s conduct in failing to appear as ordered was egregious and without justification before proceeding to the dispositional phase of proceedings. We then address whether the circuit court lacked competency to proceed to the dispositional hearing without abiding by the waiting period, and we determine that it did.

### A. Interpreting Wis. Stat. § 48.23(2)(b)3.

¶9 This is a case of statutory interpretation. We review questions of statutory interpretation de novo. State v. Forrett, 2022 WI 37, ¶5, 401 Wis. 2d 678, 974 N.W.2d 422. We interpret statutes by discerning the plain meaning of the language in the context of the statute. "If the meaning of the statute is plain, we ordinarily stop the inquiry." State ex rel. Kalal v. Cir. Ct. for Dane Cnty., 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 (quotations omitted). We use the

5

"common, ordinary, and accepted meaning" of words absent a technical or specially defined usage or meaning.  Id. "Statutory language is read where possible to give reasonable effect to every word, in order to avoid surplusage."  Id., ¶46.

¶10  To resolve this case we must interpret Wis. Stat. § 48.23(2)(b)3., which reads in pertinent part:

> [A] parent 18 years of age or over is presumed to have waived his or her right to counsel and to appear by counsel if the court has ordered the parent to appear in person at any or all subsequent hearings in the proceeding, the parent fails to appear in person as ordered, and the court finds that the parent's conduct in failing to appear in person was egregious and without clear and justifiable excuse.  Failure by a parent 18 years of age or over to appear in person at consecutive hearings as ordered is presumed to be conduct that is egregious and without clear and justifiable excuse.  If the court finds that a parent's conduct in failing to appear in person as ordered was egregious and without clear and justifiable excuse, the court may not hold a dispositional hearing on the contested adoption or involuntary termination of parental rights until at least 2 days have elapsed since the date of that finding.

(Emphasis added).

¶11  The crux of this case is the last sentence of Wis. Stat. § 48.23(2)(b)3. (underlined above), which presents a straightforward conditional statement.  If the court finds that the parent's failure to appear as ordered was "egregious and without clear and justifiable excuse," then the court "may not" hold a dispositional hearing until at least two days after the court made the egregiousness finding.

¶12  No party contests that the "if" condition was met here, and for good reason.  The court ordered R.A.M. to appear

6

in person, and R.A.M. failed to do so. Then the court found her failure to appear to be "egregious" and "without justification." Because the "if" condition was met, the last sentence of § 48.23(2)(b)3. requires the court to wait at least two days before conducting a dispositional hearing. Here the court violated § 48.23(2)(b)3. when it failed to abide by the statutorily imposed waiting period.

¶13 The petitioners disagree with this application, but do not meaningfully contend with the conditional statement discussed above. Instead, they urge us to consider the statute in context, and argue that a waiver of counsel must occur in order for the subdivision to apply. Additionally, petitioners insist that the statute is ambiguous. To resolve the ambiguity, petitioners encourage us to look to both the statute's title and its legislative history.

¶14 Petitioners maintain that the last sentence of § 48.23(2)(b)3. should be read in context with the full statute. According to the petitioners, such a reading leads to the conclusion that the two-day waiting period applies only when a parent has waived their right to counsel (or when counsel has withdrawn or been discharged——the petitioners are inconsistent on this point). We are not persuaded. While we agree that analyzing the last sentence in context is essential ("statutory language is interpreted in the context in which it is used; not in isolation but as part of a whole," Kalal 271 Wis.2d 633, ¶46) we see no support in the text for petitioners' assumption regarding waiver of counsel. When (as here) a parent fails to

7

appear as ordered, and the court finds the parent's failure to appear egregious and unjustified, then Wis. Stat. § 48.23(2)(b)3. provides for two consequences. First, the statute creates a statutory presumption that the parent has waived counsel, and second the statute imposes a waiting period for a dispositional hearing. Once a court makes the egregiousness finding, the two-day waiting period is triggered. The statute does not require additional unwritten elements such as the waiver of counsel, the withdrawal of counsel, or the discharge of counsel, in order for the two-day waiting period to apply. In short, the statute's two-day waiting period language is plain and unambiguous.

¶15 Because the conditions that trigger the two-day waiting period are plain and unambiguous, we will not use Wis. Stat § 48.23's title——"right to counsel"——to create ambiguity or rewrite the plain text of the statute. Statutory titles may be helpful "for the purpose of relieving ambiguity," but ultimately, "titles are not part of the statutes." State v. Dorsey, 2018 WI 10, ¶30, 379 Wis. 2d 386, 410, 906 N.W.2d 158, 170 (internal quotation marks and alterations omitted); see also Williams v. Am. Transmission Co., 2007 WI App 246, ¶12, 306 Wis. 2d 181, 742 N.W.2d 882 (Ct. App. 2007) ("Wisconsin courts ordinarily follow the rule that, although statutory titles may assist in resolving ambiguity in statutory language, statutory titles cannot be used to create ambiguity."). Therefore, the title of the statute does not alter our understanding of the

8

statute, or compel us to add any additional conditions for the two-day waiting period to occur.

¶16  Similarly, when the meaning of a statute is plain, we do not consult legislative history to ascertain its meaning. See Kalal, 271 Wis. 2d 633, ¶51 ("This rule generally prevents courts from tapping legislative history to show that an unambiguous statute is ambiguous." (internal quotations omitted)).  Consequently, we do not consult the statutory title or legislative history in this case, or use either of them to supplant the language of the statute itself.

¶17  To summarize, Wis. Stat. § 48.23(2)(b)3. is unambiguous, allowing us to rely on its plain language without reliance on extrinsic sources.  That plain language dictates that when a court finds that a parent's failure to appear was egregious and without justifiable excuse, there is a presumption that the parent has waived their right to counsel, and, importantly for this case, the court must wait two days to hold the dispositional hearing.[7]

## B. Lack of Competency

¶18  Having determined that the circuit court violated Wis. Stat. § 48.23(2)(b)3. by failing to wait two days to hold the dispositional hearing, we next must determine whether the court lacked competency to hold the dispositional hearing before the two days had elapsed.  This is a question of law that this court

---

[7] Our determination that the two-day waiting period applies is dispositive.  Therefore, we decline to address whether a waiver of the right to counsel occurred here, or delve further into the statutory presumption of waiver.

9

reviews independently. <u>Village of Trempeleau v. Mikrut</u>, 2004 WI 79, ¶7, 273 Wis. 2d 76, 681 N.W.2d 190.

¶19 The two-day waiting period at issue here is couched in mandatory language. The statute states that if a court makes an egregiousness finding, it <u>may not</u> proceed to a dispositional hearing without waiting two days. "'May not' is a negative term. Where statutory restrictions are couched in negative terms, they are usually held to be mandatory." <u>Brookhouse v. State Farm Mut. Auto. Ins. Co.</u>, 130 Wis. 2d 166, 170, 387 N.W.2d 82 (Ct. App. 1986). Interpreting a similar "may not" structure, the court of appeals wrote in <u>Brookhouse</u>: "Negative words in a grant of power should never be construed as directory. Where an affirmative direction is followed by a negative or limiting provision, it becomes mandatory. Thus, where the statute says that the time for motions after verdict may not be enlarged, these are negative words regarding the grant of power. We hold that the language is mandatory." <u>Id.</u> (internal citations omitted). And here the circuit court clearly failed to follow the statute's mandate.

¶20 Given the circuit court's failure to follow the statutory mandate, we must next decide if that failure resulted in a loss of competency. As we said in <u>Mikrut</u>, a court's "failure to comply with a statutory mandate pertaining to the exercise of subject matter jurisdiction may result in a loss of the circuit court's competency to adjudicate the particular case before the court." <u>Mikrut</u>, 273 Wis. 2d 76, ¶9.

10

¶21 Not all errors of statutory compliance result in a loss of competency. However, when a circuit court's error is central to the statutory scheme, a loss of competency results. "Many errors in statutory procedure have no effect on the circuit court's competency. Only when the failure to abide by a statutory mandate is 'central to the statutory scheme' of which it is a part will the circuit court's competency to proceed be implicated." Id., ¶10.

¶22 This court has previously held that statutory time limits in ch. 48 cases are central to the statutory scheme. In Sheboygan Cnty. Dep't of Soc. Servs. v. Matthew S., 2005 WI 84, ¶36, 282 Wis. 2d 150, 698 N.W.2d 631, a termination of parental rights case, we held that a failure to adhere to statutory time limits in ch. 48 cases violates the central scheme of the statute and therefore the court lacked competency to proceed.

¶23 It is true that the legislature subsequently passed Wis. Stat. § 48.315(3), stating that the failure "by the court . . . to act within any time period specified in [Chapter 48] does not deprive the court . . . of competency." Importantly, however, the failure to act within a time limitation is not at issue in this case. Instead, this case is about a failure to wait an adequate amount of time before proceeding. The legislature has not passed a law concerning a court's failure to abide by a ch. 48 mandatory waiting period. Therefore, we must evaluate whether or not the two-day waiting period requirement is central to the statutory scheme of ch. 48

11

such that a violation of the requirement deprives the court of competency.

¶24 Here, we conclude that the two-day waiting period is central to the statutory scheme. The two-day waiting period serves as a basic procedural safeguard for parents in termination of parental rights proceedings, potentially providing them opportunity to participate in the disposition hearing, or to ask the court to reconsider a default judgment following an egregiousness finding. See Wis. Stat. §§ 48.427(1); 48.23(2)(c). Affording parents basic procedural safeguards serves the express legislative purpose of providing "judicial and other procedures through which children and all other interested parties are assured fair hearings." Wis. Stat. § 48.01(1)(ad). The requirement also serves the underlying purpose of ch. 48: "the best interests of the child . . . shall always be of paramount consideration." See Wis. Stat. § 48.01(1). This is true not least because a brief, two-day window may allow certain matters to be resolved that would otherwise result in months or even years of appeal. The waiting period is therefore no mere technical requirement, but is instead central to the statutory scheme of ch. 48.

¶25 Because the two-day waiting period is central to the statutory scheme, a court lacks competency to proceed to a dispositional hearing when it fails to wait at least two days after finding a parent's absence to be egregious and

12

unjustifiable. As a result, we hold that the circuit court here lacked competency to proceed with the dispositional hearing.[8]

### III. CONCLUSION

¶26 We affirm the court of appeals' ruling and remand for proceedings consistent with this decision. The circuit court violated Wis. Stat. § 48.23(2)(b)3. when it failed to wait at least two days before proceeding to a dispositional hearing once the court found R.A.M.'s absence was "egregious and without clear and justifiable excuse." Consequently, the court lacked competency to proceed in this case and R.A.M. is therefore entitled to a new dispositional hearing.

*By the Court.*——The decision of the court of appeals is affirmed.

---

[8] Because we determine that the circuit court lacked competency to proceed with the dispositional hearing, we do not address R.A.M.'s alternative argument that the failure to wait two days violated her due process rights. Md. Arms Ltd. P'ship v. Connell, 2010 WI 64, ¶48, 326 Wis. 2d 300, 786 N.W.2d 15 ("Issues that are not dispositive need not be addressed." (citation omitted)).

¶27 ANNETTE KINGSLAND ZIEGLER, C.J. *(dissenting).* What happens when a parent, who is represented by a lawyer, fails to attend the fourth day of a termination of parental rights ("TPR") trial,[1] even though the court ordered her to attend? For the majority opinion, the parent's intentional violation of the court order and choice not come to court results in her being able to control the outcome of the proceeding, derail stability for the child, and undermine the circuit court's conclusion that parental rights be terminated. "Because of the majority's conclusion, a circuit court's authority to enforce its orders is diminished, a non-appearing party's behavior is rewarded, and [a child's life] continue[s] to hang in the balance." Dane Cnty. Dep't of Human Servs. v. Mabel K., 2013 WI 28, ¶76, 346 Wis. 2d 396, 828 N.W.2d 198 (Ziegler, J., dissenting). I dissent.

¶28 The purpose of the TPR statutes is to provide predictability, permanency, and stability for the child. Wis. Stat. § 48.01(1)(ag).[2] In pursuit of this purpose, "[t]he courts

---

[1] Judge Ellen R. Brostrom of the Milwaukee County circuit court presided.

[2] Wisconsin Stat. § 48.01(1)(ag) provides:

> To recognize that children have certain basic needs which must be provided for, including the need for adequate food, clothing and shelter; the need to be free from physical, sexual or emotional injury or exploitation; the need to develop physically, mentally and emotionally to their potential; and the need for a safe and permanent family. It is further recognized that, under certain circumstances, in order to ensure that the needs of a child, as described in this paragraph, are provided for, the court may determine that it is in the best interests of the child for the

1

and agencies responsible for child welfare should also recognize that instability and impermanence in family relationships are contrary to the welfare of children," so they exist to help "eliminat[e] the need for children to wait unreasonable periods of time for their parents to correct the conditions that prevent their safe return to the family." § 48.01(1)(a). But the opposite is happening for this child. P.M.'s best interests have not been paramount. P.M. has been left waiting in a place of ongoing instability for his biological mother, R.A.M., to correct the conditions preventing his safe return. P.M. has suffered long periods of instability and impermanence, culminating in the State's petition to terminate R.A.M.'s parental rights to P.M.

¶29 R.A.M. failed to appear for a court-ordered trial date in the TPR proceeding. Despite having knowledge of the TPR trial and of the court order requiring her attendance, R.A.M. chose not to attend day four of the scheduled TPR trial. In situations such as these, the statutes do not divest the circuit court of the ability to enter default, sanction the non-appearing parent, and proceed to disposition. R.A.M. was represented by a lawyer, who advocated for her in court. The court never dismissed R.A.M.'s counsel from representation. In fact, counsel actively represented R.A.M. We must afford deference to the circuit court's credibility determinations and ability to default the non-appearing party. R.A.M. chose to not

child to be removed from his or her parents, consistent with any applicable law relating to the rights of parents.

2

attend the "grounds phase" of the hearing, and the circuit court proceeded immediately to disposition, ultimately granting the State's petition to terminate R.A.M.'s parental rights.

¶30 To be clear, the record reflects that R.A.M. understood the gravity of these proceedings. The record is replete with unpleasant facts demonstrating R.A.M. had unfortunately been down this road before.[3] The court clearly ordered her to attend the TPR proceedings. R.A.M. was informed of the consequences of failing to attend. Yet, R.A.M. chose, for whatever reason, not to appear.

¶31 The majority errs in applying the timing requirements of Wis. Stat. § 48.23(2)(b)3. to the facts and procedural posture of this case. Section 48.23 addresses the right to counsel and waiver of counsel, not default. While the title of a statute is not dispositive,[4] the words of the statute are, and every single part of that statute deals with TPR proceedings and whether a parent has a right to counsel. Here, R.A.M. had counsel, and counsel was present and actively participated at

---

[3] This case presents a statutory claim. To that end, R.A.M.'s familial history, which pre-dates the TPR proceeding involving P.M., are simply illustrative. But, they are illustrative in speaking to R.A.M.'s general knowledge and cognizance of court proceedings in general, and TPR proceedings specifically. Her experience with the system, and the court's recognition of her track record of appearing for court proceedings, belie any insinuation that R.A.M.'s decision to not obey a court order to appear in this proceeding was done unknowingly or unwittingly.

[4] See Wis. Stat. § 990.001(6) ("Statute titles and history notes.") "The titles to subchapters, sections, subsections, paragraphs and subdivisions of the statutes and history notes are not part of the statutes."

R.A.M.'s TPR trial. Counsel was never even presumed waived. The statute the majority relies upon is inapplicable here.

¶32 The majority misapplies the second subsection of Wis. Stat. § 48.23 to reverse the circuit court's decision to proceed immediately to disposition. However, the language of that subsection addresses when a parent is presumed to have waived their right to counsel by their conduct. As the record clearly demonstrates, the court never found a presumption that R.A.M. waived counsel. Counsel was present in court and meaningfully participated. Waiver of counsel was never discussed. A finding of waiver of counsel was never made. In fact, the court's finding, that R.A.M. egregiously failed to appear in the courtroom,[5] was made pursuant to a standard default judgment sanction with her counsel present, not a waiver of counsel standard. Hence, the majority applies a statute addressing

_____

[5] A finding of egregiousness pursuant to a default sanction for a parent's failure to appear at a TPR trial is important because "the extreme sanction of dismissal or default judgment may not be imposed for mere nonappearance, in the absence of a showing of bad faith or egregious conduct." Schneider v. Ruch, 146 Wis. 2d 701, 706, 431 N.W.2d 756 (Ct. App. 1988); see also Dane Cnty. Dep't of Human Servs. v. Mabel K., 2013 WI 28, ¶100, 346 Wis. 2d 396, 828 N.W.2d 198 (Ziegler, J., dissenting) ("Before a circuit court may sanction a party who failed to comply with a court order, the party's conduct must be egregious or in bad faith."); Adolph Coors Co. v. Movement Against Racism, 777 F.2d 1538, 1542 (11th Cir. 1985) ("[T]he decision to enter a default judgment ought to be the last resort——ordered only if noncompliance is due to willful or bad disregard of court orders."); United States v. DeFrantz, 708 F.2d 310, 311 (7th Cir. 1983) (holding that the federal rules of civil procedure "authorizes the entry of a default judgment as a sanction for a defendant's failure to show up at his deposition, whether or not the court has ordered him to attend, . . . but the sanction is proper only if the failure [to show up] is willful").

4

presumed waiver of counsel via conduct to the wrong context. The majority relies on the wrong statute to impose time constraints which handcuff the circuit court from acting.

¶33 In summary, the facts of this case demonstrate that the majority is not properly applying this statutory scheme. R.A.M. can be sanctioned for violating a court order by absenting herself from these proceedings. Default judgment is an appropriate sanction for R.A.M.'s nonattendance.

## I. BACKGROUND

¶34 As the majority lays out, TPR cases follow a bifurcated process——grounds and disposition. Majority op., ¶3 n.4. At the grounds phase, the State must prove by clear and convincing evidence that at least one of the statutory grounds for termination of parental rights exist. Wis. Stat. § 48.415. If the State succeeds in making this showing, the case proceeds then to the dispositional phase. At the dispositional phase, the court must determine whether terminating parental rights is in the best interests of the child. Wis. Stat. § 48.426(2).

¶35 "Parental rights termination adjudications are among the most consequential of judicial acts, involving as they do 'the awesome authority of the State to destroy permanently all legal recognition of the parental relationship.'" Steven V. v. Kelley H., 2004 WI 47, ¶21, 271 Wis. 2d 1, 678 N.W.2d 856 (quoting Evelyn C.R. v. Tykila S., 2001 WI 110, ¶20, 246 Wis. 2d 1, 629 N.W.2d 768 (quoting another source)). "The profound consequences of termination have necessitated the development of detailed statutory requirements [as] set out in

5

Subchapter VIII of Chapter 48." Sheboygan Cnty. Dep't of Health & Human Servs. v. Julie A.B., 2002 WI 95, ¶23, 255 Wis. 2d 170, 648 N.W.2d 402. Chapter 48, also known as the "Children's Code," directs that "[i]n construing this chapter, the best interests of the child . . . shall always be of paramount consideration." Wis. Stat. 48.01(1); see also Darryl T.-H. v. Margaret H., 2000 WI 42, ¶33, 234 Wis. 2d 606, 610 N.W.2d 475 ("The best interests of the child is the polestar of all determinations under ch. 48, the Children's Code."); David S. v. Laura S., 179 Wis. 2d 114, 149-50, 507 N.W.2d 94 (1993) ("The legislature and this court have made clear that the best interests of the child is the polestar of all determinations under ch. 48.").

¶36 R.A.M., who was appointed a lawyer, contested the TPR petition. The record reflects that she understood the court's standing order that she was required to appear in person for all court appearances and could be found in default for failing to appear. The court informed R.A.M. of the standing orders in her case, including ordering R.A.M. to "make all court appearances" and warning that if she failed to do so, "[the court] could find you in default in which we would be making decisions without your input." The court further ordered that R.A.M.

> communicate with and cooperate with your attorney once you get one, and you respond to any discovery should that come about with their help and also continue to comply with the CHIPS dispositional order.
>
> Again, any failure to do those things could result in a default judgment. Okay?
>
> [R.A.M.]: All right.

6

THE COURT: All right. We will get an adjourned initial appearance date.

¶37 R.A.M. appeared for the first three dates of the scheduled bench trial on March 28 and 31, 2022, and April 1, 2022. She was present when the court scheduled three more trial dates for July 5, 6, and 15, 2022. R.A.M. failed to appear for the July 5 trial date. Interestingly, that was the date the State would have had the opportunity to cross-examine her.

¶38 The court gave counsel an opportunity to call R.A.M. R.A.M. said she was "attempting to clear a bench warrant issued for a criminal complaint with interference with custody." State v. R.A.M., No. 2023AP441, ¶7, unpublished slip op. (Wis. Ct. App. June 6, 2023). R.A.M. claimed she was only recently made aware of the warrant. Id. R.A.M. further claimed that she was advised to contact the sheriff department and was told to contact the local police.

¶39 According to the State, R.A.M. had ample opportunity to resolve the warrant prior to her missed trial date. The trial court questioned the advice that R.A.M. had "purportedly" received. The court noted that the warrant had been filed on June 22, 2022, well before the trial date. The court concluded that R.A.M. had opportunity to resolve the case before a warrant was issued and that her testimony conflicted with other facts.

¶40 The State made a motion for default judgment and to "strike [R.A.M.'s] contest posture and find her in default for failing to comply with court orders and failing to appear here in court." R.A.M., No. 2023AP441, ¶8. The guardian ad litem ("GAL") joined the motion.

7

¶41 The court weighed the credibility of R.A.M.'s reason for not appearing, noting that it was "conveniently timed." The court did not immediately grant the motion and instead gave R.A.M. time to appear later that day. Following a break in the afternoon proceedings, "the court, after discussion with the prosecutor and the family case manager, decided R.A.M. may not have been candid with trial counsel" and concluded that R.A.M.'s story was not credible. R.A.M., No. 2023AP441, ¶12. The circuit court further concluded that the State was prejudiced by R.A.M.'s nonappearance and inability to finish its cross-examination, and that the court was being manipulated by R.A.M. After an afternoon recess, the court concluded that the State proved both grounds for termination as alleged in the petition. It found that R.A.M.'s failure to appear was "egregious, in bad faith, and without justification." The circuit court made an egregiousness finding, specifically addressing R.A.M.'s counsel in declaring that

> [R.A.M.'s] story does not seem credible. I -- I think she's manipulating all sorts of systems. But again, she was ordered to be here this morning, and we can't proceed on the merits without her. The State is prejudiced in not being able to finish its cross-examination. I think she's misleading the Court; I think she's misleading you in her version of the events. And I do find that to be egregious and bad faith and without justification.
>
> So at this point, I am going to grant the State's motion. I am going to strike her contest posture.
>
> I can, I think, use the testimony and evidence that's already been admitted for prove-up, and then we'll move to disposition.

8

The court stated that it would entertain a motion to re-open the default if R.A.M. appeared the next day, but "[o]nly if she's got . . . a really good reason with solid documentation." However, the circuit court then decided to proceed immediately to the dispositional stage. The record reflects that testimony was taken from the family case manager. R.A.M.'s counsel participated in the "grounds" and "disposition" proceedings, in fact conducting cross-examination, lodging objections, and making closing arguments. The record is not clear that R.A.M. had any witnesses to present, except potentially for herself.

¶42 Ultimately, the court concluded that it was "in [P.M.'s] best interest that" the court terminate R.A.M.'s rights. The circuit court therefore granted the TPR petition, entered an order terminating R.A.M.'s rights, and vacated the two remaining trial dates. The circuit court sanctioned her non-appearance, and entered default judgment against R.A.M.

¶43 R.A.M. appealed. The court of appeals reversed the circuit court's TPR order:

> [I]f [Wis. Stat. ]§ 48.23(2)(b)3. applies to the case before the court——meaning the court has found the parent waived a right to counsel——then, the court may not immediately proceed to disposition and must wait at least the two days required by statute (and not more than forty-five days, as is also required). When the court fails to obey the statutory time periods, it not only lacks competency to proceed, it violates the parent's right to due process.

R.A.M., No. 2023AP441, ¶40. The GAL petitioned this court for review. The argument made before us is that the circuit court's failure to abide by a two-day delay before proceeding to

9

disposition violated the requirements of § 48.23(2)(b)3. That statute is inapplicable to the facts of this case.[6]

## II. WISCONSIN STAT. § 48.23(2)(b)3.

¶44 Wisconsin Stat. § 48.23 is entitled "Right to counsel." This section contains the subsection at issue: Wis. Stat. § 48.23(2), entitled "Right of parent to counsel," which states:

> Notwithstanding subd. 1, a parent 18 years of age or over is presumed to have waived his or her right to counsel and to appear by counsel if the court has ordered the parent to appear in person at any or all subsequent hearings in the proceeding, the parent fails to appear in person as ordered, and the court finds that the parent's conduct in failing to appear in person was egregious and without clear and justifiable excuse. Failure by a parent 18 years of age or over to appear at consecutive hearings as ordered is presumed to be conduct that is egregious and without clear and justifiable excuse. If the court finds that a parent's conduct in failing to appear in person as ordered was egregious and without clear and justifiable excuse, the court may not hold a dispositional hearing on the contested adoption or involuntary termination of parental rights until at least 2 days have elapsed since the date of that finding.

§ 48.23(2)(b)3.

---

[6] Because the record does not reflect that R.A.M.'s counsel was presumed waived, I determine that Wis. Stat. § 48.23(2)(b)3. is not applicable. The circuit court did not violate the statute when it proceeded to disposition after making an egregiousness finding. Since I do not find the circuit court to have violated an inapplicable statute, I do not reach the second question of whether the circuit court lost competency to proceed. Bergmann v. McCaughtry, 211 Wis. 2d 1, 6, 564 N.W.2d 712 (1997) ("Because our resolution of the first issue is dispositive, we need not and do not address the second . . . issue.").

10

¶45 Statutory interpretation begins with the language of the statute. State ex rel. Kalal v. Cir. Ct. for Dane Cnty., 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110. The purpose of our inquiry is to give the statute "its full, proper, and intended effect." Id., ¶44. "Context is important to meaning." Id., ¶46. "[S]tatutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." Id. "A statute's purpose or scope may be readily apparent from its plain language or its relationship to surrounding or closely-related statutes——that is, from its context or the structure as a coherent whole." Id., ¶49.

¶46 The majority ignores Wis. Stat. § 48.23(2)(b)3.'s contextual clues to hyper-fixate on the last sentence of the statute, see majority op., ¶11, which states:

> If the court finds that a parent's conduct in failing to appear in person as ordered was egregious and without clear and justifiable excuse, the court may not hold a dispositional hearing on the contested adoption or involuntary termination of parental rights until at least 2 days have elapsed since the date of that finding.

When we interpret statutes, we begin with the language of the statute. Kalal, 271 Wis. 2d 633, ¶45. So, while "[c]ontext is important to meaning," id., ¶46, we cannot isolate portions of a statute's plain language to analyze while ignoring the rest. Rather, the "statutory language is interpreted in the context in which it is used; not in isolation but as part of a whole . . . ." Id.

11

¶47 The language of this entire statute is plain: This statute deals with waiver of counsel. Wisconsin Stat. § 48.23(2)(b)3. addresses the scenario in which a parent, by their conduct, is presumed to have waived their right to counsel. This understanding of the statute mirrors the plain language of the sentences which immediately precede the sentence the majority focuses on, which references when a parent over 18 years of age is presumed to have waived counsel.[7] This understanding of the statute is further reflected in the subsection which immediately follows the sentence the majority

---

[7] The majority, in focusing on the final sentence of Wis. Stat. § 48.23(2)(b)3. as the "crux of this case," majority op., ¶11, completely ignores the rest of the statute from which they pulled the final sentence. The purpose of conducting statutory interpretation is to give the statute "its full, proper, and intended effect." State ex rel. Kalal v. Cir. Ct. for Dane Cnty., 2004 WI 58, ¶44, 271 Wis. 2d 633, 681 N.W.2d 110. We cannot give § 48.23(2)(b)3. its "full proper, and intended effect" if we excise the final sentence in a paragraph from the sentences which immediately precede it in that same paragraph. These preceding sentences provide important context aiding in determining the statute's meaning, that this two-day delay statutory scheme is implicated in situations in which a parent, by their conduct, is presumed to have waived their right to counsel. Section 48.23(2)(b)3.'s opening sentences state:

> Notwithstanding subd. 1, a parent 18 years of age or over is presumed to have waived his or her right to counsel and to appear by counsel if the court has ordered the parent to appear in person at any or all subsequent hearings in the proceeding, the parent fails to appear in person as ordered, and the court finds that the parent's conduct in failing to appear in person was egregious and without clear and justifiable excuse. Failure by a parent 18 years of age or over to appear at consecutive hearings as ordered is presumed to be conduct that is egregious and without clear and justifiable excuse.

12

focuses on, which again deals with waiver of counsel.[8] As the plain language of the statute shows, this entire statutory scheme deals with the waiver of counsel. This statute is intended to apply to situations in which a parent, by their conduct, is presumed to have waived their right to counsel.

¶48 Because the statutory meaning is plain, we need not consult the statute's title. But even if we do, the title of this statute "provide[s] further confirmation for our plain meaning analysis"[9] that the statute is only concerned with the right to counsel. State v. Lopez, 2019 WI 101, ¶25, 389 Wis. 2d 156, 936 N.W.2d 125.

¶49 The statute at issue here, Wis. Stat. § 48.23(2)(b)3., "Right of parent to counsel," clearly deals with the right to counsel. It is a subsection of Wis. Stat. § 48.23, entitled "Right to counsel," which deals entirely with whether a parent

---

[8] Wis. Stat. § 48.23(2)(c) ("In a proceeding to vacate or reconsider a default judgment granted in an involuntary termination of parental rights proceeding, a parent who has waived counsel under par. (b)1. or who is presumed to have waived counsel under par. (b)3. in the involuntary termination of parental rights proceeding shall be represented by counsel, unless in the proceeding to vacate or reconsider the default judgment the parent waives counsel as provided in par. (b)1. or is presumed to have waived counsel as provided in par. (b)3.").

[9] While not dispositive, statute titles do provide valuable "[c]ontext [which] is important to meaning." Kalal, 271 Wis. 2d 633, ¶46; see also Aiello v. Vill. of Pleasant Prairie, 206 Wis. 2d 68, 73, 556 N.W.2d 697 (1996) ("Although titles are not part of statutes, . . . they may be helpful in interpretation."); Wis. Stat. § 990.001(6) ("The titles . . . of the statutes . . . are not part of the statutes."); State v. Lopez, 2019 WI 101, ¶25, 389 Wis. 2d 156, 936 N.W.2d 125 ("Statute titles are not dispositive.").

13

has a right to counsel, the process of accessing counsel, waiver of counsel, and more.[10]

¶50 The facts of this case are also clear. R.A.M. was represented by counsel throughout the TPR proceedings. Counsel advocated on her behalf. The court never once discussed waiver of counsel. The issue never came up. Nor did the court make any findings relating to waiver of counsel. Such would be required if waiver of counsel occurred. In short, this case had nothing to do with R.A.M. having the right to representation of counsel. The circuit court ultimately determined that R.A.M.'s failure to appear when the court had ordered her to, to be the reason why the court found R.A.M. to have engaged in "egregious conduct." Wisconsin Stat. § 48.23 is, therefore, not even applicable.

¶51 Instead, as the record shows, the court's egregiousness finding was made pursuant to a standard default judgment sanction. The circuit court found that R.A.M. was not being honest about her reasons for failing to appear as the court ordered her to, and determining that R.A.M.'s behavior was not forthcoming, the circuit court granted default judgment against R.A.M. Notably, R.A.M.'s counsel was still present and still representing R.A.M. even in R.A.M.'s absence. These factual findings are due our deference. See Wis. Stat.

---

[10] See e.g., Wis. Stat. § 48.23 "Right to counsel"; § 48.23(2) "Right of parent to counsel"; § 48.23(3) "Power of the court to appoint counsel"; § 48.23(4) "Providing counsel"; § 48.23(4m) "Discharge of counsel"; § 48.23(5) "Counsel of own choosing."

14

§ 805.17(2) ("Findings of fact shall not be set aside unless clearly erroneous . . . ."); State v. Williams, 2002 WI 1, ¶5, 249 Wis. 2d 492, 637 N.W.2d 733 ("An appellate court reviews the circuit court's findings of fact under the clearly erroneous standard of review."). There was no waiver of counsel connected to these egregiousness findings. R.A.M.'s counsel was still present and representing her.

¶52 Given this context, we are not in a waiver of counsel posture as required under Wis. Stat. § 48.23. Instead, default proceedings and the rules of civil procedure apply, "except where different procedure is prescribed by statute or rule." Wis. Stat. § 801.01.

III. DEFAULT JUDGMENT POSTURE, NOT WAIVER OF COUNSEL.

¶53 Courts can enter a default judgment sanction for a variety of reasons, such as in this case, for violating the court's scheduling order requiring R.A.M.'s appearance.[11] See Evelyn C.R., 246 Wis. 2d 1, ¶17 ("[A] circuit court has both inherent authority and statutory authority . . . to sanction

_____

[11] Wisconsin Stat. § 806.02, "Default judgment," provides, "A default judgment may be rendered against any party who has appeared in the action but who fails to appear at trial. If proof of any fact is necessary for the court to render judgment, the court shall receive the proof." Wis. Stat. § 806.02(5). See also Gaertner v. 880 Corp., 131 Wis. 2d 492, 494-95, 499, 504-06, 389 N.W.2d 59 (Ct. App. 1986) (affirming the circuit court's entry of default judgment against a party for failure to appear at a scheduling conference, but reversing as to damages requested as they were unsupported by the record); State v. L.M.-N., Nos. 2014AP2405 & 2014AP2406, ¶18, unpublished slip op. (Wis. Ct. App. Oct. 8, 2015) ("Our supreme court has concluded that circuit courts have the authority to sanction parties who do not comply with court orders, including by entering default judgments.").

15

parties for failing to obey court orders."). "The decision to sanction a party is within the sound discretion of the circuit court." Mabel K., 346 Wis. 2d 396, ¶99 (Ziegler, J., dissenting) (quoting Evelyn C.R., 246 Wis. 2d 1, ¶18). Of the sanctions circuit courts can impose, "default judgment is the ultimate sanction." Miller v. Hanover Ins. Co., 2010 WI 75, ¶31, 326 Wis. 2d 640, 785 N.W.2d 493 (quoting other sources). Courts imposing this "ultimate sanction" of default must ensure that it is "just." See Wis. Stat. § 804.12(2)(a)3. ("If a party . . . fails to obey an order to provide or permit discovery, . . . the court . . . may make such orders in regard to the failure as are just, [including] rendering a judgment by default against the disobedient party[.]"); Wis. Stat. § 805.03 ("For failure . . . of any party . . . to obey any order of the court, the court . . . may make such orders in regard to the failure as are just, including but not limited to orders authorized under s. 804.12(2)(a)."). For a court to justly sanction a parent with default, the court must first find the parent's conduct was "egregious[] or in bad faith." See Mable K., 346 Wis. 2d 396, ¶69. "Failure to comply with a circuit court scheduling order without a clear and justifiable excuse is egregious conduct." Id., ¶100 (Ziegler, J., dissenting); see also Indus. Roofing Servs. Inc. v. Marquardt, 2007 WI 19, ¶43, 299 Wis. 2d 81, 726 N.W.2d 898 (lead op.). Again, we owe deference to the circuit court's exercise of discretion.

¶54 Default or finding of default is different than waiver of the right to counsel under Wis. Stat. § 48.23. Section

16

48.23(2)(b)3. is reflective of how important the right to counsel is, and how the court must make certain findings before presuming parents have waived their right to counsel. Here, the court's findings were related to default by R.A.M. not appearing as required pursuant to the court's scheduling order. Nothing in the court's findings dealt with R.A.M. waiving the right to counsel by conduct, as is discussed in § 48.23(2)(b)3. R.A.M. was represented by counsel at disposition. The court permitted R.A.M.'s counsel to continue her representation in R.A.M.'s absence. The court definitely did not dismiss R.A.M.'s counsel. So, even though R.A.M. was defaulted at grounds, she was still actively represented by counsel at disposition. The court made egregiousness and bad faith findings here pursuant to the court entering a default judgment sanction against R.A.M. As a result, the statutory two-day delay is not implicated.

¶55 The majority argues Wis. Stat. § 48.23(2)(b)3.'s two-day waiting period is intended to be triggered by default. Majority op., ¶14. But that understanding creates conflicting factual situations like R.A.M.'s, in which counsel could be present and participating yet presumed waived.

¶56 Finally, the TPR statutes are not designed to reward a party who may strategically decide to not appear because the case is not going well for them. Quite obviously, if a case is not going well, a party may not want to attend for any number of reasons——such as not wanting to testify or not having to answer for failing to comply with discovery requests. For any number of reasons, in a civil proceeding, a party may choose to have

17

their lawyer appear on their behalf instead to advocate for them. That is typically allowable in most civil cases.

¶57 Here, the court ordered R.A.M.'s appearance. R.A.M. violated that order. Violation of a court order is sanctionable. The two-day waiting period is not implicated by every default or sanction. I conclude that the record demonstrates that the circuit court's findings did not presume a waiver of the right to counsel and instead, the court's findings related to plain old traditional default judgment and a sanction for failing to comply with the court order. The two-day delay before disposition has no bearing on this sanction.

¶58 I would also note that not all default sanctions will implicate the waiver of counsel. TPR disposition time periods are outlined in Wis. Stat. § 48.424(4), and a judge may proceed immediately from receipt of a TPR after factfinding to hear evidence and motions for disposition. It is only if counsel is presumed waived by the parent egregiously violating an order to appear without clear and justifiable cause that the court has to wait two days before holding a dispositional hearing. To conclude otherwise would allow the tail to wag the dog: a parent who wishes, for whatever reason, to cause additional delay could simply choose to not show up to the remainder of the hearing and thereby receive additional time they would not otherwise have. But judges must be able to control their calendars and courtrooms. Default judgment is a tool available for judges to use in TPRs, and does not always extinguish the parent's right to counsel.

18

¶59 Here, the statutory two-day waiting period was not automatically triggered, as the facts of the case, and the findings supported in the record, clearly indicate that the circuit court sanctioned R.A.M. with default for her violation of the scheduling order. Default judgment is an appropriate sanction for R.A.M.'s nonattendance. The court never made a determination that R.A.M.'s still-present counsel was presumed waived. Wisconsin Stat. § 48.23(2)(b)3. does not properly apply to the facts of this case.

## IV. CONCLUSION

¶60 The statutory scheme the majority employs is inapplicable as counsel was not presumed waived. Wisconsin Stat. § 48.23(2)(b)3. addresses a circuit court who makes an egregiousness finding pursuant to a parent being presumed to have waived counsel. Section 48.23(2)(b)3. does not apply to situations such as the one here, where the circuit court made a finding that R.A.M.'s conduct was "egregious and without justifiable excuse" and entered default against her, even though R.A.M.'s counsel was still present, was still communicating with her client, and was still able to represent R.A.M.'s interests at the dispositional phase of the TPR trial. As the record reflects, the circuit court did not make any findings of egregiousness pursuant to an implied or express waiver of counsel. Thus, while the majority may be right that the statute itself is straightforward and unambiguous, majority op., ¶¶14-15, and 17, it must be applied to the right context. This case does not present a waiver of counsel issue. The circuit court

19

was not statutorily bound to wait two days to proceed to disposition.

¶61 Because the findings which the circuit court made in this case met standard default judgment sanction posture, we should be affirming that determination. The majority, as did the court of appeals, applies the wrong statute to the facts of this case: Wisconsin Stat. § 48.23(2)(b)3.'s two-day waiting period does not apply to the default judgment finding the circuit court made here.

¶62 For all the foregoing reasons, I respectfully dissent.

¶63 I am authorized to state that Justice BRIAN HAGEDORN joins this dissent.